PURE OIL COMPANY *v.* STATE OF MINNESOTA.

ERROR TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

No. 74.  Argued November 21, 22, 1918.—Decided December 9, 1918.

For the purpose of promoting the public safety and of protecting the public from fraud and imposition, a State, in the absence of conflicting regulation by Congress, may provide for inspection of illu-

minating oils and gasoline, while yet in interstate transit, and impose a charge upon the owner reasonably sufficient to cover the cost of inspection. P. 161.

Such inspection charges, fixed by a state legislature, are accepted as reasonable unless clearly shown to be obviously and largely beyond what is needed to pay for the inspection service rendered. P. 163.

Where the receipts from inspection fees through a number of years considerably exceeded the cost of inspection, but this was explained by increasing consumption of the product inspected, and the legislature during the period reduced the fee, *held*, that there was no ground to question the good faith of the legislature in enacting the law under which the fees were charged. P. 164.

Upon the question whether an inspection of gasoline served to promote public safety and protect against fraud and imposition, concurrent findings of state trial and supreme courts *held* conclusive. *Id.*

Whether oil and gasoline, imported into a State in tank cars, continued to be subjects of interstate commerce while awaiting state inspection at the owner's place of business, before they were unloaded and held for general sale and distribution—not decided. *Id.*

134 Minnesota, 101, affirmed.

THE case is stated in the opinion.

*Mr. Nathan H. Chase,* with whom *Mr. Clifford Thorne* was on the brief, for plaintiff in error.

*Mr. Egbert S. Oakley,* Assistant Attorney General of the State of Minnesota, with whom *Mr. Clifford L. Hilton,* Attorney General of the State of Minnesota, was on the brief, for defendant in error.

MR. JUSTICE CLARKE delivered the opinion of the court.

In this case the State of Minnesota sued the plaintiff in error, an extensive dealer in oils, to recover fees, which were charged for the inspection of oils and gasoline, between February 1, 1913, and April 25, 1915. The judgment of the State Supreme Court affirming that of the trial court in favor of the State is before us for review on writ of error.

The inspection involved was provided for by chapter 502 of the General Laws of the State of Minnesota for the year 1909, the title of which is: "An Act relating to the inspection of petroleum products, the appointment of chief inspector of oils and deputy inspectors, manner of inspection, establishing fees for inspection and salaries of inspectors, prohibiting the sale of adulterated oils, and providing penalties for the violation thereof," and the title of the chapter in which the original act is embodied in the General Statutes of the State is: "Inspector of Oils." Gen. Stats. of Minnesota, 1913, c. 20.

Section 3622 provides that no person shall sell or offer for sale in the State illuminating oil which has not been inspected as provided for by the act, or which will ignite at a temperature below 120° Fahrenheit. A method is prescribed for making this "fire test," and for determining the gravity of such oils and the results must be stenciled on each container of oil.

Section 3625 deals with gasoline, and requires that it shall be subject to the same inspection and control as is prescribed for illuminating oils "except that the inspectors are not required to test it other than to ascertain its gravity."

All containers of gasoline must be labeled conspicuously with the word "Gasoline," the gravity must be stenciled thereon and it is made unlawful to sell or offer it for sale until inspected and approved. Provision is also made (§ 3626) for the inspection of gasoline "receptacles" to keep them "free from water and all other foreign substances," and the sale of "adulterated" gasoline is prohibited (§ 3627). Obviously this is, in form, a not unusual type of inspection law.

The findings of fact by the trial court include the following:

During the period under discussion the State inspected 9,914 barrels of oil and 81,998 barrels of gasoline owned

by the plaintiff in error, all of which were brought into Minnesota from other States by common carriers in tank cars, which were held at the place of business of the plaintiff in error until inspected, and all were unloaded from the cars in which they arrived and were held for general sale and distribution. And this in terms:

"That the testing of gasoline in the manner provided by the statute . . . indicates to the public the degree of safety of such gasoline, and has a fair relation to the quality and value thereof. That such inspection protects the community, as applied to sales of gasoline in Minnesota, from frauds and impositions, and advises, informs and warns the public of the volatile character of said gasoline and the relative degree of care to be exercised in handling, storing and using the same."

On the case thus stated it is claimed that the Supreme Court of Minnesota erred in refusing to hold:

First, That the inspection fees imposed were so excessive in amount as to render the act a revenue rather than an inspection measure and that, as such it offends against § 8, Article I of the Federal Constitution, as an attempt by the State to regulate interstate commerce; and

Second, That to the extent that the act applies to gasoline it is not a valid exercise of the police powers of the State, because it does not serve to protect or safeguard the health, morals or convenience of the public and therefore offends against the Fourteenth Amendment to the Federal Constitution by depriving the plaintiff in error of its property without due process of law to the extent of the fees which it in terms exacts.

The principles of law applicable to the decision of the case thus before us are few and they are perfectly settled by the decisions of this court.

In the exercise of its police power a State may enact inspection laws, which are valid if they tend in a direct and substantial manner to promote the public safety and

welfare or to protect the public from frauds and imposition when dealing in articles of general use, as to which Congress has not made any conflicting regulation, and a fee reasonably sufficient to pay the cost of such inspection may constitutionally be charged, even though the property may be moving in interstate commerce when inspected. *Patapsco Guano Co.* v. *North Carolina Board of Agriculture,* 171 U. S. 345, 357, 358, 361; *McLean & Co.* v. *Denver & Rio Grande R. R. Co.,* 203 U. S. 38; *Asbell* v. *Kansas,* 209 U. S. 251; *Patterson* v. *Kentucky,* 97 U. S. 501, 504; *Savage* v. *Jones,* 225 U. S. 501, 525.

Specifically, state laws providing for the inspection of oils and gasoline have several times been recognized as valid by this court. *Patterson* v. *Kentucky,* 97 U. S. 501; *Red "C" Oil Mfg. Co.* v. *Board of Agriculture of North Carolina,* 222 U. S. 380, and *Waters-Pierce Oil Co.* v. *Deselms,* 212 U. S. 159.

But if such inspection charge should be obviously and largely in excess of the cost of inspection, the act will be declared void because constituting, in its operation, an obstruction to and burden upon that commerce among the States the exclusive regulation of which is committed to Congress by the Constitution. *Postal Telegraph-Cable Co.* v. *Taylor,* 192 U. S. 64; *Foote & Co.* v. *Maryland,* 232 U. S. 494, 504, 508.

Plainly the application of the principles thus stated leaves open for consideration only the question as to whether the inspection charge is so excessive as to render the act a revenue measure, as the plaintiff in error claims that it is, and not an inspection law enacted in good faith to promote the public safety and prevent fraud and imposition upon the users of oil and gasoline. In the consideration of this question the discretion of the legislature in determining the amount of the inspection fee will not lightly be disturbed. Its determination is *prima facie* reasonable and the courts will not "enter into any nice

calculation as to the difference between cost and collection; nor will they declare the fees to be excessive unless it is made clearly to appear that they are obviously and largely beyond what is needed to pay for the inspection services rendered." *Foote & Co.* v. *Maryland*, 232 U. S. 494, 504, and *Western Union Telegraph Co.* v. *New Hope*, 187 U. S. 419.

The findings of fact give the following statement of receipts and expenses under the law assailed, from and including the year 1909, in which it was passed, to April 30, 1915, which includes the last day covered by the claim in suit, viz:

| YEAR | RECEIPTS | EXPENSES | PERCENTAGE OF RECEIPTS USED FOR DEPARTMENT EXPENSES |
|---|---|---|---|
| 1909 | $34,934 | $30,288 | 87% |
| 1910 | 50,667 | 40,044 | 79% |
| 1911 | 56,852 | 40,494 | 71% |
| 1912 | 63,354 | 39,999 | 63% |
| 1913 | 72,656 | 47,117 | 65% |
| 1914 | 81,565 | 52,467 | 64% |
| July 31, 1914, to April 30, 1915, | 62,689 | 46,863 | 75% |

This statement of expenses, however, does not include any charge for offices for the Oil Department, which were in the state capitol, for the services of the state auditor and treasurer in keeping accounts and making collections, for legal counsel, and for services of chemists, or for the Public Examiner's Department, these not being susceptible of exact determination. The reduced percentage of expenses to receipts in several of the years was obviously due to the rapid expansion in the use of gasoline without a corresponding increase in the expenses of administration. This percentage, however, was rising in 1915 and doubtless has increased greatly since, under war conditions. We take judicial notice also of the fact that in 1915 the inspection

fee on oil and gasoline in tank cars was reduced by the legislature from 10 to 7 cents and in 1917 from 7 to 5 cents. It was obviously impossible for the state legislature to determine accurately in advance either what the receipts from or the cost of inspection would be, and having regard to the period of rapid increase in the use of gasoline, through which the country was passing in the years under consideration, and to the action of the legislature in reducing the fee, we cannot consent to impute to that body a purpose other than to conform to the requirements of the Constitution when enacting this legislation.

The conclusion thus arrived at sustains the validity of the state law as an inspection measure and renders it unnecessary to consider the much argued question as to whether or not the oil and gasoline in question were in interstate transit when inspected. As an inspection law, under the decisions cited, the act is validly applicable, alike whether the property was in intra or in interstate commerce when inspected.

Neither is it necessary to consider whether the evidence sustains the contention that the inspection of gasoline provided for by the act was of a character such that it did not serve to promote the public safety or to protect the community against fraud and imposition. The finding of fact by the trial court, approved by the Supreme Court of the State, is accepted as conclusive by this court. *Northern Pacific Ry. Co.* v. *North Dakota*, 236 U. S. 585, 593.

It results that the judgment of the Supreme Court of Minnesota must be

*Affirmed.*