WOFFORD OIL CO. v. SMITH, Attorney General of Alabama, et al.

(District Court, M. D. Alabama, N. D.   January 26, 1920.)

No. 243.

1. COMMERCE ☞51—STATE INSPECTION LAW BURDEN ON INTERSTATE COMMERCE.

Gen. Acts Ala. 1919, p. 996, regulating sale of motor fuel oils, requiring sellers to procure tags from the state for all containers at a charge of one-half a cent per gallon, providing for testing of samples of oil "from time to time," and that the expense incurred under the act, "not exceeding ten per cent. of the total receipts," shall be payable from the fund accruing thereunder, *held* to impose a burden on interstate commerce, and void under the commerce clause of the Constitution.

2. COMMERCE ☞51—STATE INSPECTION LAWS IMPOSING EXCESSIVE FEES INVALID.

A state, in the exercise of its police powers, may provide for inspection of commodities sold therein and make a reasonable charge thereon; but, where such charges are obviously and largely in excess of the expense of inspection, the law is void, as imposing an unlawful burden on interstate commerce.

3. COURTS ☞263—FEDERAL COURT WILL DETERMINE VALIDITY OF STATE STATUTE WHERE FEDERAL QUESTION IS INVOLVED.

On application for preliminary injunction in a suit to restrain enforcement of a state statute, as in violation of the federal Constitution, heard before three judges as provided in Judicial Code, § 266 (Comp. St. § 1243), where a substantial federal question is presented, the court also has jurisdiction to consider the validity of the statute under the state Constitution.

4. STATUTES ☞6—STATE "REVENUE BILL" ORIGINATING IN SENATE INVALID.

Gen. Acts Ala. 1919, p. 996, regulating the sale and inspection of motor fuel oils, which requires dealers to pay a fee of one-half cent per gallon, but limits the expense incurred under the act to 10 per cent. of the amount collected, which act was introduced in the Senate, *held* invalid, under section 70 of the state Constitution, which provides that "all bills for raising revenue shall originate in the House of Representatives."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Revenue Law.]

5. INJUNCTION ☞85(2)—REMEDY AT LAW OF PERSON SUBJECTED TO INVALID INSPECTION LAW NOT ADEQUATE.

A complainant, subject to the provisions of an invalid state inspection law as a dealer in oils, which required it to purchase tags for each container and incur other expenses, *held* not to have an adequate remedy at law by separate actions to recover fees paid thereunder and to be entitled to maintain a suit to enjoin its enforcement.

In Equity.   Suit by the Wofford Oil Company against J. Q. Smith, Attorney General of Alabama, and others.   On application for preliminary injunction.   Granted.

J. P. Tillman and W. B. White, both of Birmingham, Ala., and Charles G. Middleton, of Louisville, Ky., for plaintiff.

J. Q. Smith, of Birmingham, Ala., and Lawrence E. Brown, of Scottsboro, Ala., for defendants.

Before WALKER, Circuit Judge, and GRUBB and HENRY D. CLAYTON, District Judges.

HENRY D. CLAYTON, District Judge. The plaintiff, an Alabama corporation, having its principal place of business at Birmingham, in that state, brings this bill against the state officers charged with the execution of the law here questioned, to enjoin the operation of the act of the Legislature of Alabama passed September 27, 1919, and approved by the Governor on the 29th day of that month, upon the grounds: (1) that the act is repugnant to the commerce clause, section 8, art. 1, of the Constitution of the United States; and (2) that in its passage the Legislature transcended section 70 of the Constitution of Alabama, which provides, "All bills for raising revenue shall originate in the House of Representatives," and "no revenue bill shall be passed during the last five days of the session."

Application for interlocutory injunction upon the ground of the unconstitutionality of such statute is to be now heard and determined by three judges, as provided by section 266 of the Judicial Code (Comp. St. § 1243). The cause is submitted upon plaintiff's motion for interlocutory injunction, the bill and a number of supporting affidavits, and the unverified answer of the defendants, admitting in part and denying in part the allegations of the bill.

[1] The statute challenged (Gen. Acts Ala. 1919, p. 996) is entitled:

"An act regulating the sale and exchange of gasoline, benzine, naphtha, and other liquid motor fuels, and providing for the tagging and inspection of such products."

Under it every one "selling or offering for sale or exchange" in the state, any liquid motor fuel must have tags attached to each tank car or other vessel in which the fuels are contained, and it is provided that the tagging of the original container obviates the tagging of the smaller containers to which it may be transferred, but the containers to which it is transferred must be labeled in a certain manner provided therein. The state highway commission must make requisition upon the state auditor for the tags necessary to supply the demand, and he, in turn, has the tags printed and delivered to the commission. The auditor is obliged to charge the commission with all tags received at the price of one-half cent for each gallon printed or written on the tags (section 7); the commission must keep on hand for sale tags of such denomination of gallons as will be convenient for the use of persons offering for sale or exchange gasoline, etc., and "shall charge for such tags the price of one-half cent for each gallon designated on said tag" (section 8). The commission is required to report to the auditor at the end of each month the number of tags sold during the month, and "pay into the state treasury the total amount of moneys received from such sales." It is also stipulated in the act that:

"The expense incurred under the provisions of this act, not exceeding ten per cent. of the total receipts, shall be payable from the funds accruing from this act to the state highway department upon presentation of properly vouchered statements of such expense." Section 9.

It is made the duty of the chemist of the state highway department to test samples of gasoline, etc., on the application of any person, etc., or, when the sample of any such commodity is procured from the

manufacturer, consumer, or dealer by the highway commission. And further:

"It is the duty of said Commission, from time to time, to secure samples of such products being offered for sale in different parts of this state, [and] it shall be the duty of said chemist to test the same," etc.

. And it is further provided:

"No gasoline, benzine, naphtha, or other liquid motor fuel shall be sold or offered for sale which on distillation fails to yield a distillate of 18 per cent. by volume at 230 degrees Fahrenheit, 65 per cent. by volume at 302 degrees Fahrenheit, the dry or end point of distillation to be not higher than 437 degrees Fahrenheit. The initial boiling point of gasoline, benzine, or naphtha shall be not higher than 149 degrees Fahrenheit." Section 3. .

Finally, section 10 prescribes that:

"Any person, firm, association, or corporation, who sells, offers for sale or exchange any gasoline," etc., "which has not been tagged or labeled in the manner hereinbefore provided," etc., "shall be fined not less than fifty nor more than five hundred dollars for each separate offense."

It is shown that the plaintiff is engaged in the business of buying and selling petroleum and the products thereof, including gasoline, etc.; that the plaintiff has purchased and is constantly and frequently purchasing in Louisiana, Texas, and states other than Alabama, for delivery f. o. b. the cars at the places of purchase, large quantities of gasoline and other liquid motor fuels, and that much of it is shipped to plaintiff in tank cars, and some of it in containers or packages of various descriptions and capacities, that such gasoline and other liquid motor fuels so purchased by the plaintiff are brought into the state of Alabama for sale, and that portions thereof are sold and delivered by plaintiff to purchasers at wholesale, both within and outside the state of Alabama, in the original tank cars and other containers in which the fuel was purchased.

It is shown that the plaintiff had on hand within and without the state of Alabama, and en route to points of delivery to purchasers from plaintiff on November 29, 1919, when said act became effective, approximately 200,000 gallons of gasoline and other motor fuels; that the plaintiff had on hand for sale after said act became effective and at the time the bill was filed, within and without the state of Alabama and en route to points of delivery, approximately 120,000 gallons of such fuels; that the plaintiff's sales of such fuels in the year 1919 amounted to 2,890,790 gallons, and that the average increase in sales per month over each preceding month in the year 1919 amounted to 70,646 gallons; that the increase in sales during the year 1919, over the year 1918, amounted to 1,244,170 gallons, and that, by the rate prescribed for the sale of tags under the act here challenged, the cost of tags to the plaintiff in 1918 would have been, had this act been in operation, $8,233.14, and for the year 1919, $14,453.95; that, of the total volume of business done by the plaintiff in the year 1919, 223,308 gallons consisted of liquid motor fuels purchased by the plaintiff without the state of Alabama, and delivered by the plaintiff to its purchasers within the state of Alabama, in the same tank cars, containers, or

packages in which it was purchased by the plaintiff outside of the state of Alabama for delivery within the state; this being delivered directly by the plaintiff to its purchasers within the state of Alabama, without stoppage at the place of business of the plaintiff in Alabama. Of the liquid motor fuels sold by the plaintiff in the state of Alabama, 2,322,401 gallons were manufactured or purchased without the state of Alabama and brought into the state for sale therein. It is also shown to our reasonable satisfaction that all motor fuels sold and consumed in the state of Alabama during the year 1919 amounted to 32,-642,250 gallons, and that, at the rate of one-half cent per gallon prescribed for the purchase of tags under the act, the total sum which the state would have realized from this law, had it been then in force, would be $163,211.25, and it is reasonably certain, on account of the increasing use of such fuels, that sum would be exceeded in the year 1920, and so on.

The plaintiff has paid its license or occupation tax for selling fuel oils and the like, as required by the general revenue act of Alabama of 1919. It is also established that the greater portion of the business of the sellers of liquid motor fuels in the state of Alabama is the sale of such fuels purchased at points outside of that state, and brought by the plaintiff and other dealers in such commodities into the state of Alabama, for sale within and without the state, at wholesale and retail, in original tank cars and other containers.

[2] It is familiar law that in the exercise of its police power the state may inspect commodities, including motor fuels, and charge therefor fees reasonably necessary for the expenses of the inspection. It is also settled law that, where such charges are obviously and largely in excess of the amounts sufficient to cover the expenses of such inspection, the act of the state requiring payment of the tax, generally enforced by exacting penalties, is void, because it is an interference with interstate commerce by imposing upon it an unlawful burden.

In the present case the act by express terms limits the expenses of its administration, including the inspection of the commodities to 10 per cent. of the total funds raised by the act. The language is that:

"The expense incurred under the provisions of this Act, not exceeding ten per cent. of the total receipts, shall be payable from the funds accruing from this Act. * * *"

This, of course, means *all* the expenses of administration. It is to be noted that this limitation upon the expenses comes after the stipulation that the state highway commission shall each month "pay into the state treasury the total amount of moneys received" under the act. After deducting the allowance of 10 per cent. to which the expenses of the act are limited, there remains unexpended for the cost of administration, 90 per cent. of all the moneys raised under the law and paid into the state treasury. Manifestly, this 90 per cent. of the funds is freed from any requirement for the enforcement of the act and must be intended for general revenue purposes. Evidently this 10 per cent. was deemed sufficient for the administration of the act, and this is so, not only because of the express limitation of 10 per cent., but the intention to say in effect that it is sufficient is made even more cer-

tain by the fact that the general appropriations act passed by the Legislature at its last session, the same session at which this act was passed, made no provision for the payment of any expenses incurred under the act.

The Attorney General, the state auditor, the state highway commission, and the chemist of that commission are yoked together as the combined agencies for the operation of the act. There can be no question that the expenses of this law are relatively very small, and that the sum raised by the act is grossly in excess of such expenses. Moreover, it is shown by the general appropriation made by the last Legislature of Alabama that the total expenses of the highway department, of the auditor's office, and of the Attorney General's office, involving larger duties outside of the requirements of this act, are much less than the annual receipts to come from the act. We may say, therefore, that whether or not the costs of the administration of this act are limited by its express provision to 10 per cent. of the total receipts, the act imposes a burden upon interstate commerce to the end that the state may have a larger revenue. Because of this vice the statute is hostile to the commerce clause of the Constitution, and therefore void. To support this conclusion decisions of the Supreme Court of the United States can be cited. Some of them may be examined.

The act of the Legislature of Maryland providing for the inspection of oysters was considered in Foote v. Maryland, 232 U. S. 494, 34 Sup. Ct. 377, 58 L. Ed. 698. There a charge of one cent per bushel was levied to help defray the expenses of such inspection, and other expenses of the state fishery force, upon oysters unloaded from vessels, where the oysters were to be not further shipped in bulk by vessels. The inspection fee was charged in equal proportion to buyer and seller. Mr. Justice Lamar, for the court, said:

"Inspection necessarily involves expense, and the power to fix the fee, to cover that expense, is left primarily to the Legislature, which must exercise discretion in determining the amount to be charged, since it is impossible to tell exactly how much will be realized under the future operations of any law. Besides, receipts and disbursements may so vary from time to time that the surplus of one year may be needed to supply the deficiency of another. If, therefore, the fees exceed cost by a sum not unreasonable, no question can arise as to the validity of the tax so far as the amount of the charge is concerned. * * * Still, effect must be given to the provision of the Constitution, which, in unusual and emphatic terms, permits the state to collect only what is 'absolutely necessary.' If, therefore, it is shown that the fees are disproportionate to the service rendered, or that they include the cost of something beyond legitimate inspection to determine quality and condition, the tax must be declared void, because such costs by necessary operation obstruct the freedom of commerce among the states. McLean v. Denver & Rio Grande R. R. Co., 203 U. S. 38 (27 Sup. Ct. 1, 51 L. Ed. 78]; Brimmer v. Rebman, 138 U. S. 78, 83 [11 Sup. Ct. 213, 35 L. Ed. 862]; Postal Telegraph-Cable Co. v. Taylor, 192 U. S. 64 [24 Sup. Ct. 208, 48 L. Ed. 342]; Patapsco Co. v. North Carolina, 171 U. S. 345, 354 [18 Sup. Ct. 862, 43 L. Ed. 191]: Red C. Oil Co. v. North Carolina, 222 U. S. 380, 394 [32 Sup. Ct. 152, 56 L. Ed. 240]; Savage v. Jones, 225 U. S. 501 [32 Sup. Ct. 715, 56 L. Ed. 1182]."

The case here is very like that one. But there a part of the receipts were devoted to the cost of administering the law and the re-

mainder were used for a purpose other than for inspection, while here 90 per cent. of all the funds raised and paid into the state treasury is left free from the cost incident to inspection, and obviously is to be used by the state for general purposes. In connection with the foregoing excerpt it may be stated that as far back as Patapsco Guano Co. v. North Carolina, 171 U. S. 345, 18 Sup. Ct. 862, 43 L. Ed. 191, it was held that the principle of limitation of the expenses incident to an inspection law to the costs was applicable in every case under scrutiny whether it arose under section 10 or section 8 of article 1 of the Constitution.

The General Assembly of Virginia enacted that it should be unlawful to offer for sale within the limits of that state, beef, veal, or mutton which had been slaughtered 100 miles or more, in or outside of the state, from the place where offered for sale, unless first inspected, etc., and it provided that the inspector should receive as his compensation one cent per pound, to be paid by the owner of the meat. The court said:

"It is suggested that this statute can be sustained by presuming—as, it is said, we should do when considering the validity of a legislative enactment—that beef, veal, or mutton will or may become unwholesome 'if transported 100 miles or more from the place at which it was slaughtered' before being offered for sale. If that presumption could be indulged, consistently with facts of such general notoriety as to be within common knowledge, and of which, therefore, the courts may take judicial notice, it ought not to control this case, because the statute, by reason of the onerous nature of the tax imposed in the name of compensation to the inspector, goes far beyond the purposes of legitimate inspection to determine quality and condition, and by its necessary operation obstructs the freedom of commerce among the states. * * * Without considering other grounds urged in opposition to the statute and in support of the judgment below, we are of opinion that the statute of Virginia, although avowedly enacted to protect its people against the sale of unwholesome meats, has no real or substantial relation to such an object, but, by its necessary operation, is a regulation of commerce, beyond the power of the state to establish." Brimmer v. Rebman, 138 U. S. 78, 83, 11 Sup. Ct. 213, 214 (35 L. Ed. 862).

The statute of Washington required that products of petroleum intended for use or consumption in that state should be inspected before being sold. The Supreme Court passed upon the question of its validity in Standard Oil Co. v. Graves, 249 U. S. 389, 39 Sup. Ct. 320, 63 L. Ed. 662, and held that the statute must be judged by its necessary effect, and that if it is to violate the Constitution of the United States the law must be declared void. On page 395 of 249 U. S., on page 321 of 39 Sup. Ct. (63 L. Ed. 662), in the report, where Foote v. Maryland, supra, is cited with approval, it is said:

"It was held that, in view of the excessive nature of the inspection fees, the requirement of the payment thereof necessarily imposed a burden upon interstate commerce in excess of the expenses of inspection, and that the act was therefore void. The subject was fully considered in an opinion by the late Mr. Justice Lamar, speaking for this court, and after recognizing the power of the state to impose reasonable inspection fees, and that such legislation will not be declared void, unless the fees are obviously and largely beyond what is needed for the cost of inspection, he said: 'If, therefore, it is shown that the fees are disproportionate to the service rendered, or that they include the cost of something beyond the legitimate inspection to

determine quality and condition, the tax must be declared void, because such costs by necessary operation obstruct the freedom of commerce among the states. McLean v. Denver & Rio Grande R. R. Co., 203 U. S. 38 [27 Sup. Ct. 1, 51 L. Ed. 78]; Brimmer v. Rebman, 138 U. S. 78, 83 [11 Sup. Ct. 213, 35 L. Ed. 862]; Postal Telegraph-Cable Co. v. Taylor, 192 U. S. 64 [24 Sup. Ct. 208, 48 L. Ed. 342]; Patapsco Co. v. North Carolina, 171 U. S. 345, 354 [18 Sup.. Ct. 862, 43 L. Ed. 191]; Red C. Oil Co. v. North Carolina, 222 U. S. 380, 394 [32 Sup. Ct. 152, 56 L. Ed. 240]; Savage v. Jones, 225 U. S. 501, 504 [32 Sup. Ct. 715, 56 L. Ed. 1182]. The principles stated in Foote & Co. v. Maryland were recognized in Pure Oil Co. v. Minnesota, decided by this court at this term, 248 U. S. 158 [39 Sup. Ct. 35, 63 L. Ed. 180]. The inspection fees there in question were held not excessive, and we said ([248 U. S.] 162 [39 Sup. Ct. 37, 63 L. Ed. 180]): 'But if such inspection charge should be obviously and largely in excess of the cost of inspection, the act will be declared void because constituting, in its operation, an obstruction to and burden upon that commerce among the states the exclusive regulation of which is committed to Congress by the Constitution.'"

Under the Washington statute $335,000 was collected, of which only about $80,000 was disbursed for expenses, leaving a revenue of over $255,000. Under this Alabama statute upward of $160,000 is to be raised, and only 10 per cent. of it is to be paid out for the expense of administering the law. If 23.98 per cent. paid for expenses (the Washington case) leaves an amount derived from an inspection law so greatly in excess of the cost of inspection as to render the law unconstitutional, a fortiori 10 per cent. of the total amount derived under this Alabama act paid for expenses would leave a sum over and above the cost of administration still more excessive, and in a greater degree antagonistic to the Constitution.

In Pure Oil Co. v. State of Minnesota, 248 U. S. 158, 39 Sup. Ct. 35, 63 L. Ed. 180, the state oil inspection was upheld, because it was not shown that the receipts under the law were greatly in excess of the cost of the administration of the act; but in that case the court fully recognized and reaffirmed the principle laid down in the Foote and other like cases.

Where it was doubtful whether the tax or fees imposed would be in excess of the expenses of the administration of the act, the court has held that the act should be tested before being declared invalid. But we apprehend that this rule can only be maintained when it is uncertain that the revenue derived from the act is largely in excess of the expenses incurred in its administration. Certainly the doctrine cannot be applied in this case, for the reason that the sales of fuel oils in Alabama for the years 1918 and 1919 show that, if the act had been in operation during those years, the revenue would have been grossly in excess of the expenses of administering the law; and it is not to be doubted that such revenue would be more largely excessive in 1920 and succeeding years.

It has been said, also, that where the revenue exceeds the expenses the Legislature will presumably correct such ground of invalidity. But that cannot be a sound suggestion in this case, for the Legislature of Alabama is not now in session, and will not again be until 1923, unless the Governor shall call it into extraordinary session. Const. Ala. 1901, § 48. In the meantime, shall interstate commerce continue to be unlawfully burdened? Must the courts await the exercise of

the discretion of the Governor? Must they let the unconstitutional enactment by the state be enforced until the Legislature meets in 1923? We do not think so.

[3] Coming, now, to the question as to whether or not the act is in contravention of the Constitution of Alabama, it is to be observed that as a general rule a federal court will not, in advance of a decision by the state court of final resort, declare a state statute, passed in usual form necessary to its validity and regular on its face, obnoxious to provisions peculiar to the Constitution of the state, unless the case imperatively demands such a decision. Pelton v. National Bank, 101 U. S. loc. cit. 144, 25 L. Ed. 901. Examination of L. & N. Railroad Co. v. Garrett, 231 U. S. 301, 34 Sup. Ct. 48, 58 L. Ed. 229, shows that it was an appeal from an order denying a motion for interlocutory injunction, and the motion was heard by three judges, as the case is here, under section 17 of the Act of June 18, 1910, c. 309, 36 Statutes at Large, 339, 557, which is now contained in section 266 of the Judicial Code, and in the Act of March 4, 1913, 2 U. S. Comp. Stats. § 1243. The court considered and passed upon the question as to whether the state statute was in conflict with the Constitution of the state. On page 303 of 231 U. S., on page 50 of 34 Sup. Ct. (58 L. Ed. 229), the court said:

"Because of the federal questions raised by the bill the Circuit Court had jurisdiction and was authorized to determine all the questions in the case, local as well as federal. Siler v. Louisville & Nashville R. R. Co., 213 U. S. 175, 191 [29 Sup. Ct. 451, 53 L. Ed. 753]. A similar rule must be deemed to govern the application for preliminary injunction under the statute which requires a hearing before three judges, and authorized an appeal to this court. 36 Stat. 557. This statute applies to cases in which the preliminary injunction is sought in order to restrain the enforcement of a state enactment upon the ground of its 'unconstitutionality.' The reference, undoubtedly, is to an asserted conflict with the federal Constitution, and the question of unconstitutionality, in this sense, must be a substantial one. But, where such a question is presented, the application is within the provision, and, this being so, it cannot be supposed that it was the intention of Congress to compel the exclusion of other grounds and thus to require a separate motion for preliminary injunction, and a separate hearing and appeal, with respect to the local questions which are involved in the case and would properly be the subject of consideration in determining the propriety of granting an injunction pending suit. The local questions arising under the state Constitution and statutes were therefore before the Circuit Court, and the appeal brings them here. They may be first considered."

[4] So here we have a case where a substantial federal question is presented. The impugned statute was designed, though under another guise, to raise revenue, as we have ascertained. The bill carrying it having originated in the Senate, where Mr. Craft introduced it, the act itself is void, because in its passage the Legislature ignored the mandate of the Constitution of Alabama (section 70) that "all bills for raising revenue shall originate in the House of Representatives." It may be doubtful that the other provision of this section 70, "No revenue bill shall be passed during the last five days of the session," is applicable in the present case. It may be that the framers of the Constitution meant that no revenue bill—that is, a bill for revenue in the narrow sense—should be passed during the last five days of the ses-

sion. The act here provides for raising revenue under the guise of inspection fees, and it is not a revenue act in the ordinary acceptation of the term "revenue bill." So, perhaps, it is unnecessary to declare that in the passage of this act the Legislature offended the provisions that "no revenue bill shall be passed during the last five days of the session." It may be that this provision last quoted relates strictly to revenue bills, and it may be that the purpose of this provision was different from the purpose underlying the first clause. Certainly there is a difference in the language employed. The one clause says that "bills for raising .revenue" (and that is what the act here really purposed), while the other clause says "no revenue bill shall be passed," etc. This may mean a revenue bill as such, and which purports to be a revenue bill. The bill in this case was not a "revenue bill," strictly speaking, but was one purporting to regulate the sale and inspection of motor fuels.

[5] The defendants' answer is accompanied by their motion to dismiss the bill for want of equity, upon the ground that the plaintiff has a plain, adequate, and complete remedy at law. Of course, such motion cannot be considered at this time, for it is the duty of this court of three judges on this hearing to determine the one question: Shall interlocutory injunction issue? Whether the bill shall be dismissed for want of equity is for determination by the District Court. But, nevertheless, this tribunal now acting must necessarily consider whether the plaintiff has a plain, adequate, and complete remedy at law, for, if this is true, injunction should not issue. Of course, the plaintiff could pay the tax under protest; but the plaintiff could not sue the state for the money wrongfully exacted, and actions against the defendants, where the money is paid into the state treasury, are at least a doubtful remedy. And it has been held in Alabama that the payment of a license tax under protest was voluntary, and therefore no recovery could be had on account of such payment. Southern Railway Co. v. Mayor of City of Florence, 141 Ala. 493, 37 South. 844, 3 Ann. Cas. 106. But if respect be given to the colorable authority of the act, payment and protest would have to be made in case of each tagging and payment, and separate suit would have to be brought in case of each transaction in motor fuels. Would this be an adequate remedy? We do not think so; and if the plaintiff pursued such course, a multiplicity of lawsuits would ensue. The remedy would not be efficient, and the litigation to which the plaintiff would be compelled to resort would correspond with the number of sales that were made. Again section 1 of the act requires that the plaintiff go to large expense in the matter of furnishing its own labels to go on its containers, and placarding its various places of business in Alabama to comply with the act, and these expenses the plaintiff most probably could not recover from any one.

In Boyce v. Grundy, 3 Pet. loc. cit. 213, 7 L. Ed. 655, the court, in defining the meaning of a plain and adequate remedy, said:

"It is not enough that there is a remedy at law; it must be plain and adequate, or, in other words, as practical and efficient to the ends of justice and its prompt administration, as the remedy in equity. In the case before us, although the defense of fraud might have been resorted to, and

ought to have been sustained, in that particular suit, and, I will add, would have greatly aided the complainant in a bill to rescind, yet it was obviously not an adequate remedy, because it was a partial one. The complainant would still have been left to renew the contest upon a series of suits, and that probably after the death of witnesses."

And in Cruickshank v. Bidwell, 176 U. S. loc. cit. 81, 20 Sup. Ct. 283, 44 L. Ed. 377, it is said:

"Inadequacy of remedy at law exists where the case made demands preventive relief, as, for instance, the prevention of multiplicity of suits.  *  *  *"

In Union Pacific R. R. Co. v. Weld County, 247 U. S. 282, 38 Sup. Ct. 510, 62 L. Ed. 1110, the suit was by the railroad company to enjoin the collection of a portion of the taxes levied on its property in Weld county, Colo., in a particular year; the gravamen of the complaint being that the company's property was assessed at one-third of its value, while most of the other property was assessed at one-fifth, and some not at all, and that this operated to place an undue burden of taxation on the company, contrary to the Constitution and laws of the state, and to the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States. A portion of the taxes was conceded to be valid, and was paid. Application for interlocutory injunction was made to enjoin the collection of the disputed portion of the taxes levied, and the District Court and the Circuit Court of Appeals held that injunctive relief could not be granted, because there was a plain, adequate, and complete remedy at law. The Supreme Court, however, Mr. Justice Van Devanter speaking, quoting the rule from Davis v. Wakelee, 156 U. S. 688, 15 Sup. Ct. 555, 39 L. Ed. 578, said:

"It is a settled principle of equity jurisprudence that, if the remedy at law be doubtful, a court of equity will not decline cognizance of the suit. *  *  *  Where equity can give relief, plaintiff ought not to be compelled to speculate upon the chance of his obtaining relief at law."

And on page 287 of 247 U. S., on page 512 of 38 Sup. Ct. (62 L. Ed. 1110) it is said:

"The question is purely one of state law, and, so far as we are advised, the Supreme Court of the state has not passed on or considered it. A ruling by us on the question would neither settle it for that court nor be binding in an action to recover the tax, if paid. In these circumstances it cannot be said that the company certainly or plainly has an adequate and complete remedy at law. On the contrary, the existence of such a remedy is debatable and uncertain. And, this being so, the situation is not one in which cognizance of the present suit properly can be declined."

We find that the tax or charge imposed by the Legislature in the act entitled as stated in the beginning of this opinion is unduly in excess of the necessary expenses incident to the enforcement of the inspection law, and is, for that reason, an unlawful burden upon commerce between the states, and that the act is void, and therefore injunction must issue as prayed for; and it is so ordered.