[No. B076888. Second Dist., Div. Five. Mar. 27, 1995.]

ALASKA AIRLINES, INC. et al., Plaintiffs and Respondents, v. DEPARTMENT OF FOOD AND AGRICULTURE et al., Defendants and Appellants.

**COUNSEL**

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Walter Wunderlich, Assistant Attorney General, Douglas B. Noble, Acting Assistant Attorney General, Charles W. Getz and John Davidson, Deputy Attorneys General, for Defendants and Appellants.

Alschuler, Grossman & Pines, Burt Pines and John A. Schwimmer for Plaintiffs and Respondents.

**OPINION**

ARMSTRONG, J.—This is an appeal from a summary judgment ordering the California Department of Food and Agriculture (the Department) to return service charges collected from the respondent airlines and enjoining the Department from collecting such charges in the future.

### INTRODUCTION

The service charges were levied pursuant to the California Airport and Maritime Plant Quarantine, Inspection, and Plant Protection Act (the Act)

which has as its laudable purpose "inspection of conveyances entering California through airport and maritime facilities to prevent the introduction into, or the spread within . . . [California] . . . of pests."[1] (Food & Agr. Code, § 5350, subd. (a).)

The Act, adopted in 1990 as an urgency measure in response to the 1989-1990 Mediterranean fruit fly infestation and codified as Food and Agricultural Code sections 5350-5353, authorizes the Director of the Department of Food and Agriculture (the Director) to identify and establish a list of foreign countries which the Director believes are potential sources of exotic plant or animal pests. Conveyances, i.e., aircraft or ships, arriving from such locations and carrying animals, plants or other materials which are, or are likely to be, infested with any pest are inspected at a plant quarantine inspection station located at airports and marine terminals and assessed a "service charge" of $85, in the case of aircraft, and $200, in the case of ships, upon initial arrival in California. (Food & Agr. Code, § 5353, subd. (a).)[2]

Charges and fees collected pursuant to the Act are to be deposited in a special fund to be used by the Director for the purposes of the Act. (Food & Agr. Code, § 5353, subd. (e).) The Director is authorized to contract with federal and state agencies to assist the Director in carrying out the purposes of the Act. (Food & Agr. Code, § 5353, subd. (g).) The Director has entered into an agreement with the United States Department of Agriculture whereby the inspection fees are turned over to that agency to help pay for federally

---

[1]The Food and Agricultural Code defines "pest" as follows: " 'Pest' means any of the following things that is, or is liable to be, dangerous or detrimental to the agricultural industry of the state:

"(a) Any infectious, transmissible, or contagious disease of any plant, or any disorder of any plant which manifests symptoms or behavior which the director, after investigation and hearing, finds and determines is characteristic of an infectious, transmissible, or contagious disease.

"(b) Any form of animal life.

"(c) Any form of vegetable life." (Food & Agr. Code, § 5006.)

[2]California is much concerned with the possibility of pests arriving from outside its boundaries. Accordingly, California has adopted comprehensive regulations to protect its agricultural industry from pests and has provided for an elaborate system of plant quarantines and inspections. The Legislature has authorized the Director to establish, maintain and enforce such quarantine regulations as are deemed necessary to protect the agricultural industry from pests (Food & Agr. Code, § 5301), including the making and enforcing of such regulations to prevent any plant or thing which is, or is liable to be, infested or infected from passing over a quarantine line. (Food & Agr. Code, § 5302.) Plant quarantines are authorized. (Food & Agr. Code, § 5341.) Every operator of a motor vehicle entering the state with a shipment of an agricultural commodity shall cause the vehicle and shipment to be inspected. (Food & Agr. Code, § 5341.5.) Violations of some of these protective measures are misdemeanors. (See Food & Agr. Code, § 5341.5, subd. (d).)

mandated pest inspections. The Director is authorized by Food and Agricultural Code section 5351, subdivision (a) (section 5351(a)) to levy the service charge "to the extent authorized by subsection (b) of Section 1513 of Title 49 of the United States Code," the federal Anti-Head Tax Act (AHTA). Because the language of the AHTA is critical to our opinion, we quote the relevant portion in full here:

The AHTA as originally adopted by Congress provides in pertinent part:[3]

"§ 1513. State taxation of air commerce

"Prohibition; exemption

"(a) No State (or political subdivision thereof . . .) shall levy or collect a tax, fee, head charge, or other charge, directly or indirectly, on persons traveling in air commerce or on the carriage of persons traveling in air commerce or on the sale of air transportation or on the gross receipts derived therefrom . . . .

"Permissible State taxes and fees

"(b) Nothing in this section shall prohibit a State (or political subdivision thereof . . .) from the levy or collection of taxes other than those enumerated in subsection (a) of this section, including property taxes, net income taxes, franchise taxes, and sales or use taxes on the sale of goods or services; and nothing in this section shall prohibit a State (or political subdivision thereof . . .) owning or operating an airport from levying or collecting reasonable rental charges, landing fees, and other service charges from aircraft operators for the use of airport facilities."

Respondent air carriers approve generally of the Act and do not object to the inspection program, but they do object to the payment of the $85 service charge. They filed this declaratory relief action alleging that the service charges assessed by the Director were invalid because they are not authorized by the Act and further, that the charges are prohibited under the federal preemption doctrine by the AHTA. Respondents' motion for summary adjudication on each of these grounds was granted.

In its order granting respondents' motion, the court interpreted the Act to mean that the Director was granted the power to collect the inspection fee

---

[3]The AHTA was recodified in 1994. It is now codified as section 40116 of title 49 United States Code. Section 1513(a) was restated as section 40116(b). The words "directly or indirectly" appearing in section 1513(a) were omitted as surplus. (Historical and Statutory Notes, 49 U.S.C.A. § 40116.) The parties share the view that the omission of the words "directly or indirectly" is of no significance.

under section 5351(a) of the Act, but only to the extent authorized by section 1513, subdivision (b) (section 1513(b)) of the AHTA. The court found that the following matters were established, presenting no triable issues of material fact: The fee collected by defendants is not a tax described in section 1513(b); the state does not own or operate any of the airports at which the fee is charged to the respondents; the fee is not imposed for the use of airport facilities or for the present operation or maintenance of existing airport facilities. From these facts the court concluded that the fee is not authorized by section 1513(b) of the AHTA. Moreover, because the Act specifically provides that the Director may levy a service charge only "to the extent authorized by subsection (b)," the court determined that respondents' collection of the fee violates the Act.

The court also concluded that the fee was impermissible under section 1513(a) of the AHTA because the fee "constitutes a fee or charge on the carriage of persons travelling in air commerce and an indirect fee or charge on persons travelling in air commerce."[4] In connection with this issue, the court found that the fees charged are passed on to air passengers by the plaintiffs.

Because the order granting summary adjudication was dispositive of the action, the trial court entered a summary judgment awarding respondents restitution of all service charges paid, enjoining the collection of service charges in the future, and dismissing the remaining causes of action at respondents' request. The trial court also dismissed a cross-complaint filed by appellant against Northwest Airlines, Inc.

Appellants contend that the trial court erred in its determination that the service charge authorized by the Act is an impermissible "tax, fee, head charge, or other charge" levied directly or indirectly, on persons traveling in air commerce or on the carriage of persons traveling in air commerce within the meaning of section 1513(a). Appellants further maintain that, because the fee does not fall within those impermissible charges set forth in section 1513(a), it does not violate section 5351(a) of the Act.[5]

Respondents counter that the inspection fee is a "tax, fee, head charge, or other charge" within the meaning of section 1513(a) and thus violates the

---

[4]The trial court made no finding regarding whether the inspection fee constitutes a tax or charge on the sale of air transportation or on gross receipts. We express no view on these questions.

[5]In addition, appellants argue that respondents have no standing to sue, since they have no right to enforce the AHTA through a private right of action but must pursue administrative remedies, which would then be subject to judicial review. We concur with respondents that this issue was not raised in the summary adjudication proceedings below, and thus is not properly before us on appeal. Moreover, contrary to appellants' position, the issue is not

AHTA. Respondents also contend that because the fee is not one authorized by section 1513(b), the service charge is being levied in violation of the Act.

The essential facts relating to these issues are undisputed; thus, the issue presented is a question of law involving the interpretation of the two relevant statutes, a matter subject to our independent review. (*Engs Motor Truck Co. v. State Bd. of Equalization* (1987) 189 Cal.App.3d 1458 [235 Cal.Rptr. 117].)

## DISCUSSION

### The Anti-Head Tax Act

We begin our discussion with a brief history of the AHTA. In *Evansville Airport* v. *Delta Airlines* (1972) 405 U.S. 707 [31 L.Ed.2d 620, 92 S.Ct. 1349], the airport had established a "use and service charge of One Dollar ($1.00) for each passenger enplaning any commercial aircraft operating from" the airport. The airline challenged the constitutionality of the charge on the ground that it placed an unreasonable burden on interstate commerce in violation of the commerce clause, article I, section 8, of the federal Constitution. The court held that the commerce clause does not prohibit States or municipalities from charging commercial airlines a reasonable "head tax" on passengers boarding flights at airports within the jurisdiction, to defray the costs of airport construction and maintenance. The court noted: "No federal statute or specific congressional action or declaration evidences a congressional purpose to deny or pre-empt state and local power to levy charges designed to help defray the costs of airport construction and maintenance." (405 U.S. at p. 721 [31 L.Ed.2d at p. 631].) Concerned that local agencies, in response to the decision in *Evansville*, might enact "new, inequitable, and potentially chaotic" head taxes or other charges on persons who use air transportation, thereby burdening interstate air transportation and inhibiting the flow of interstate commerce (and, when coupled with federal levies for airport construction, impose double taxation on air travelers), Congress enacted the AHTA in 1973. (Sen. Rep. No. 93-12, 1st Sess. p. 4 (1973); see, generally, *Northwest Airlines, Inc.* v. *County of Kent, Michigan* (1994) ___ U.S. ___ [127 L.Ed.2d 183, 114 S.Ct. 855], and *Aloha Airlines, Inc.* v. *Director of Taxation* (1983) 464 U.S. 7, 13-14 [78 L.Ed.2d 10, 13-14, 104 S.Ct. 291].)

Legislative history makes clear that Congress did not intend to prohibit all state taxes or charges on air carriers: "The Senate's first proposal to limit

---

jurisdictional. (*Northwest Airlines, Inc.* v. *County of Kent, Michigan* (1994) ___ U.S. ___ [127 L.Ed.2d. 183, 194, 114 S.Ct. 855, 862] ["The question whether a federal statute creates a claim for relief is not jurisdictional"].)

state taxation would have prohibited *any* state tax—direct or indirect—on air transportation. S. 3611, 92d Cong., 2d Sess. (1972); see also H.R. 2337, 92d Cong., 1st Sess. (1971) (similar prohibition). The States, however, complained loudly at the hearings that this sweeping provision would prohibit even unobjectionable taxes such as landing fees, fuel taxes, and sales taxes on food provided to airline passengers. E.g., House Hearings, at 91 (statement of John A. Nammack, Executive Vice President, National Association of State Aviation Officials). . . . In reply, Members of Congress assured these officials that the prohibition was intended to apply only to 'head taxes' and the like, and that some clarification of the bill's intent would be in order. [Citation.] The final bill enacting § 1513 therefore appears to be a compromise following careful consideration by Congress as to the permissible scope of state taxation in the area of air commerce." (*Wardair Canada* v. *Florida Dep. of Revenue* (1986) 477 U.S. 1, 15-16 [91 L.Ed.2d 1, 14-15, 106 S.Ct. 2369] (opinion of Burger, C. J. concurring in part and concurring in the judgment.).)

The final bill reflected this compromise. "We find no paradox between § 1513(a) and § 1513(b). Section 1513(a) pre-empts a limited number of state taxes, including gross receipts taxes imposed on the sale of air transportation or the carriage of persons traveling in air commerce. Section 1513(b) clarifies Congress's view that the States are still free to impose on airlines and air carriers 'taxes other than those enumerated in subsection (a),' such as property taxes, net income taxes, and franchise taxes." (*Aloha Airlines, Inc.* v. *Director of Taxation, supra,* 464 U.S. 7, 12, fn. 6 [78 L.Ed.2d 10, 15].)

*The Inspection Fee Is Not a Head Tax Preempted by the AHTA*

The trial court concluded that the inspection fee levied under the Act constitutes a fee or charge on the carriage of persons traveling in air commerce and an indirect fee or charge on persons traveling in air commerce. The undisputed facts presented to the trial court established that the fees are based on criteria other than the number of passengers carried; that the fees are also imposed on nonpassenger flights; that the fees do not vary depending on the number of passengers or passenger receipts; that inspections are also performed on air cargo and air freight operations; that the fee is charged even if the airplane is empty; and that the amount of fee is subject to change or elimination by the director under an incentive program in which the airlines may participate, or pursuant to a request for exemption.

These facts establish that the inspection fee is not a direct head tax. It bears no relation to the number of passengers or cargo on the aircraft, nor

does it bear direct or indirect relation to persons or the carriage of persons traveling in air commerce, or the receipts derived therefrom. These facts also establish that the purpose and effect of the fee is to fund the inspection of foreign-sourced conveyances for pests, not to mask a charge otherwise prohibited by section 1513(a). (Cf. *Aloha Airlines, Inc.* v. *Director of Taxation, supra,* 464 U.S. at pp. 13-14 [78 L.Ed.2d at pp. 15-16] ["The manner in which the state legislature has described and categorized [the tax] cannot mask" a forbidden levy].)

Respondents argue that the fee becomes a part of the cost of operating the airline, which costs are passed on to passengers in the form of increased fares. Thus, respondents claim there is an indirect levy on persons traveling in air commerce or on the carriage of persons traveling in air commerce. Although the inspection fee may have the effect of increasing the operational costs of the airline and thereby increasing the average fare per passenger, this is a cost which is unrelated to the AHTA prohibitions. For the fee to be prohibited, it must bear some rational relation to persons or the carriage of persons traveling in air commerce. A fee which is based on other criteria is permitted, although passed on to passengers in the form of increased fares. (*United Air Lines, Inc.* v. *County of San Diego* (1991) 1 Cal.App.4th 418, 430 [2 Cal.Rptr.2d 212].) The fee at issue here does not have the required relation to the carriage of persons. Rather, it is a fee for the inspection of aircraft for pests, which is imposed by virtue of the fact that the aircraft arrive from designated quarantine areas.

In amending the Plant Quarantine Act of 1912 (7 U.S.C. § 151), Congress recognized the threat posed to the states by plant disease and insect infestation from plant and animal products which enter their borders, and specifically sanctioned state efforts to quarantine, prohibit or restrict the transportation of such products. (See generally, *Guam Fresh, Inc.* v. *ADA* (9th Cir. 1988) 849 F.2d 436.) Furthermore the United States Supreme Court has specifically upheld the validity of state inspection laws and the imposition of reasonable inspection fees. ▪ "In the exercise of its police power a state may enact inspection laws, which are valid if they tend in a direct and substantial manner to promote the public safety and welfare, or to protect the public from frauds and imposition when dealing in articles of general use, as to which Congress has not made any conflicting regulation, and a fee reasonably sufficient to pay the cost of such inspection may constitutionally be charged, even though the property may be moving in interstate commerce when inspected." (*Pure Oil Co.* v. *Minnesota* (1918) 248 U.S. 158, 161-162 [63 L.Ed. 180, 187-189, 39 S.Ct. 35]; cf. *Evansville Airport* v. *Delta Airlines supra,* 405 U.S. 707.) ▪ Given this context of congressional and judicial approval of inspection fees such as the one at issue here, we find nothing

in the AHTA or its legislative history which indicates that Congress intended the AHTA to prohibit the inspection fee imposed pursuant to the Act.

### The Inspection Fee Does Not Violate the Act

According to respondents, even if the inspection fee is not incompatible with the AHTA, it still violates the Act since the fee is not a fee for the use of airport facilities authorized by section 1513(b) as required by section 5351(a) of the Act. While respondents' position has some superficial appeal, we conclude that it does not survive careful scrutiny.

As noted above, section 1513(b) provides: "Nothing in this section shall prohibit a State . . . from the levy or collection of taxes other than those enumerated in subsection (a) of this section, including property taxes, net income taxes, franchise taxes, and sales or use taxes on the sale of goods or services; and nothing in this section shall prohibit a State (or political subdivision thereof . . .) owning or operating an airport from levying or collecting reasonable rental charges, landing fees, and other service charges from aircraft operators for the use of airport facilities."

With respect to user fees referred to in the second clause of section 1513(b), the Supreme Court has held that: "Sections 1513(a) and (b) together instruct that airport user fees are permissible only if, and to the extent that, they fall within 1513(b)'s savings clause, which removes from 1513(a)'s ban 'reasonable rental charges, landing fees, and other service charges from aircraft operators for the use of airport facilities.' " (*Northwest Airlines, Inc.* v. *County of Kent, Michigan, supra,* __ U.S. __, __ [127 L.Ed.2d 183, 194, 114 S.Ct. 855, 862].) A fee or charge "for the use of airport facilities" is one the proceeds of which are used to help defray the costs of operation, maintenance or development of airport facilities. (*City & County of Denver* v. *Continental Air Lines* (D.Colo. 1989) 712 F.Supp. 834, 840.) As the trial court correctly concluded, the undisputed facts establish that the proceeds of the inspection fee in question are not used for such purposes, but rather, they are used to finance an inspection program.[6] Therefore, as respondents maintain, the service charge is not authorized by the user fee exception found in section 1513(b).

Respondents contend that since the inspection fee is not authorized by section 1513(b), it is in violation of the very terms of the Act. We find this reading of the Act unpersuasive.

---

[6]The trial court found that: "[T]he evidence and reasonable inferences from these provisions [of the Act] reveal that the purpose of the Fees is to generate revenue to fund inspections to prevent pest infestation and thereby protect agricultural interests and the general public."

The legislative history of the Act makes clear that the Legislature intended to subject foreign plant and animal products to inspection upon entry into the State of California, as it has the right to do, and further intended to finance that inspection program with fees levied upon the carriers of the products, so long as that levy would not violate the mandate of the AHTA. For example, the June 27, 1990, Bill Analysis stated: "According to the Department, even if the bill is signed, the legal issue of federal preemption could postpone implementation of the program if commercial carriers argue that the State cannot assess fees to fund the inspection program." This concern that the fee might be preempted by the AHTA led the Legislature to characterize the fee as a user fee for publicly owned facilities (Enrolled Bill Rep., dated Sept. 12, 1990) and to suggest (by use of the phrase "to the extent authorized by subsection (b)") that the fee fell within the savings clause of section 1513(b). As noted above, the inspection fee is not, in fact, a user fee. Thus, according to respondents, it is not authorized by the Act.

However, respondents' interpretation of the statutory language is not persuasive. According to that interpretation, the Legislature intended to authorize collection of the inspection fee if it were a valid user fee which fell within the savings clause of section 1513(b), but not if it were wholly outside the scope of the AHTA and thus not subject to challenge based on the preemptory effect of the federal statute. This reading of the Act leads to a result which common rules of statutory construction prohibit. (*Shields* v. *Singleton* (1993) 15 Cal.App.4th 1611, 1620 [19 Cal.Rptr.2d 459].) Moreover, it is directly contradicted by the Act's legislative history, which makes clear that the AHTA was referenced in anticipation of a challenge to the fee based on federal preemption grounds, and not in order to render the fee uncollectible in the event it were impermissible under federal law because it was outside the scope of the AHTA. We conclude that, though the Legislature chose the words "authorized by section 1513(b)" in referring to the fees to be levied under the Act, it intended simply that the fees be "not prohibited" by the AHTA. This is a workable and reasonable construction of the Act. "As the court stated in *Harris* v. *Alcoholic Bev. etc. Appeals Bd.* [1961] 197 Cal.App.2d 759, 763 [18 Cal.Rptr. 151]: 'It is the duty of the courts within the framework of the statutes passed by the Legislature, to interpret the statutes so as to make them workable and reasonable.' [Citation.]" (*Regents of the University of California* v. *Superior Court* (1970) 3 Cal.3d 529, 536-537 [91 Cal.Rptr. 57, 476 P.2d 457], fn. omitted.)

CONCLUSION

We conclude that the trial court erred in finding that the inspection fee violates the Act and further erred in determining that the fee is a charge on

persons traveling in air commerce or on the carriage of persons traveling in air commerce within the meaning of section 1513(a).[7] We therefore reverse the judgment and remand the case to the trial court for further proceedings consistent with this opinion. The writ of supersedeas is discharged. Each party to bear its own costs on appeal.

Turner, P. J., and Grignon, J., concurred.

Respondents' petition for review by the Supreme Court was denied June 22, 1995.

---

[7]Due to this disposition, we do not address appellants' further claims of error, including the court's failure to reserve a reasonable opportunity to complete discovery and allow time to complete preparation of affirmative defenses, and the court's error in dismissing the cross-complaint against Northwest Airlines, Inc.