**AIR TRANSPORT ASSOCIATION OF AMERICA, et al., Plaintiffs,**

v.

**CITY OF LOS ANGELES, et al., Defendants.**

**No. CV 93–4539 AWT.**

United States District Court, C.D. California.

Feb. 15, 1994.

Ronald L. Olson, William D. Temko, Mark B. Helm, Stuart N. Senator, Munger, Tolles & Olson, Los Angeles, CA, for plaintiffs.

James K. Hahn, City Atty., Gary R. Netzer, Sr. Asst. City Atty., Breton K. Lobner, Asst. City Atty., City of Los Angeles, Dept. of Airports, Haley J. Fromholz, Harold J. McElhinny, Laurie D. Zelon, Gregory B. Koltun, Morrison & Foerster, Ronald N. Wilson, Harold G. Becks, Laura J. Barns, Wilson & Becks, Los Angeles, CA, for defendant City of Los Angeles.

## MEMORANDUM OPINION

TASHIMA, District Judge.

### INTRODUCTION

This action arises out of a dispute over landing fees at the Los Angeles International Airport ("LAX"). Plaintiffs are numerous domestic and international air carriers who operate out of LAX, and their trade association, the Air Transport Association of America (collectively plaintiffs or the "Airlines"). Defendants are the local governmental agencies responsible for setting the landing fees, the City of Los Angeles, its Department of Airports and Board of Airport (collectively the "City").

In June, 1993, the City increased commercial passenger aircraft landing fees at LAX from $.51 per 1,000 pounds of gross maximum aircraft weight to $1.56 per 1,000 pounds, effective July 1, 1993. The Airlines refused to pay these increased fees and commenced this action contesting their legality. The Airlines allege in their First Amended Complaint that: (1) the fees are unreasonable and thus violate the Anti–Head Tax Act ("AHTA"), 49 U.S.C.App. § 1513; (2) the fees unreasonably burden interstate and foreign commerce and are not justified by legitimate State or local concerns, thus violating the Commerce Clause of the Constitution, art. I, § 8, cl. 3; (3) the fees violate the Chicago Convention and numerous Bilateral Air Service Agreements; (4) the City's threat to deny airport privileges to airlines who refuse to pay the increased fees intrudes into an area preempted by the Federal Aviation Act ("FAA") and other federal laws, thus violating the Supremacy Clause of the Constitution, art. VI, cl. 2; and (5) the unreasonable landing fees and the manner in which the City is attempting to enforce them have the effect of depriving plaintiffs of rights, privileges and immunities secured to them by the Constitution, treaties and federal law, in violation of 42 U.S.C. § 1983. The Airlines seek declaratory and injunctive relief.

The City has moved to dismiss the entire First Amended Complaint pursuant to F.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted. For the reasons set forth below, the motion will be granted.

### DISCUSSION

**I. First Claim for Relief: The Anti–Head Tax Act**

In their first claim for relief the Airlines allege that the increased landing fees violate

the AHTA. The AHTA, which is a part of the FAA, provides:

(a) No State (or political subdivision thereof ...) shall levy or collect a tax, fee, head charge, or other charge, directly or indirectly, on persons traveling in air commerce or on the carriage of persons traveling in air commerce or on the sale of air transportation or on the gross receipts derived therefrom ...

(b) ... nothing in this section shall prohibit a State (or political subdivision thereof ...) owning or operating an airport from levying or collecting reasonable rental charges, landing fees, and other service charges from aircraft operators for the use of airport facilities.

49 U.S.C.App. § 1513(a) and (b). The Airlines argue that the landing fees proposed by the City violate the AHTA because they are "unreasonable."

The City contends that this claim fails to state a claim because the AHTA does not provide for a private right of action. The City argues that the dispute should be resolved initially by administrative proceedings before the Secretary of Transportation (the "Secretary").

There is no explicit grant of a private right of action in the AHTA. The Airlines argue, however, that the AHTA contains an implied private right of action.[1] They invoke the Supreme Court's analysis in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), in support of their claim.[2]

In *Cort*, the Court adopted a four-part test to determine whether a private right of action should be implied under a federal statute: First, is the plaintiff one of a class for whose "especial" benefit the statute was enacted? Second, is there clear legislative intent either to create or deny such a private right? Third, is it consistent with the underlying principles of the legislative scheme to imply a private remedy? And fourth, is the action traditionally relegated to state law such that it would be inappropriate to infer a cause of action based solely on federal law? *Id.* at 78, 95 S.Ct. at 2088. Since *Cort*, the Court has repeatedly held that the most important of these criteria is legislative intent. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979); *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 23–24, 100 S.Ct. 242, 249, 62 L.Ed.2d 146 (1979); *Suter v. Artist M.*, — U.S. —, 112 S.Ct. 1360, 1370, 118 L.Ed.2d 1 (1992).

On the issue of legislative intent, the Airlines first note that the AHTA was passed in response to the Supreme Court's holding in *Evansville–Vanderburgh Airport Auth. Dist. v. Delta Airlines, Inc.*, 405 U.S. 707, 92 S.Ct. 1349, 31 L.Ed.2d 620 (1972). In *Evansville*, the Court upheld a state imposed fee as reasonable in the face of a Commerce Clause challenge. Finding this type of regulation a potential burden on the airline industry, Congress passed the AHTA, outlawing head taxes and unreasonable fees imposed by state and local authorities. *See Aloha Airlines, Inc. v. Director of Taxation*, 464 U.S. 7, 9–10, 104 S.Ct. 291, 292–93, 78 L.Ed.2d 10 (1983). The Airlines argue that this history suggests that the AHTA was passed in order to strengthen the Airlines' position to challenge airport fees and, thus, that it must be interpreted in that light.

The Airlines contend that it would be inconsistent with a strengthening of the airlines' position to deny them a private right of action under the AHTA. They submit that

---

**1.** The Supreme Court declined the opportunity to decide this question in *Northwest Airlines, Inc. v. County of Kent*, — U.S. —, 114 S.Ct. 855, 127 L.Ed.2d 183 (1994), citing the parties' failure properly to raise the issue. Rather, the Court assumed, for the purpose of that case only, that there was an implied right of action under the AHTA. *Id.* at — – —, 114 S.Ct. at 861–62.

**2.** The Airlines' analysis of the *Cort* factors is not unique. It mirrors the reasoning of those courts that have upheld a private right of action under the AHTA. Such a right was held to exist in

*Northwest Airlines, Inc. v. County of Kent*, 955 F.2d 1054, 1058 (6th Cir.1992), *aff'd on other grounds*, — U.S. —, 114 S.Ct. 855, 127 L.Ed.2d 183 (1994); *Interface Group, Inc. v. Massachusetts Port Auth.*, 816 F.2d 9, 16 (1st Cir. 1987); and *Niagara Frontier Transp. Auth. v. Eastern Airlines, Inc.*, 658 F.Supp. 247, 250 (W.D.N.Y.1987). In other cases, a private right of action was assumed without discussion. *See e.g., Indianapolis Airport Auth. v. American Airlines, Inc.*, 733 F.2d 1262 (7th Cir.1984).

this is particularly true given that they previously had a cause of action under the Commerce Clause, as *Evansville* held. Thus, they argue, interpreting the AHTA to deny them a private right of action weakens their ability to challenge fees and, therefore, is inconsistent with the intent behind the legislation. On this basis, they contend that under the most important prong of the *Cort* analysis, a private right of action must be implied.

Moving to the remaining *Cort* factors, the Airlines argue that the entire test is fulfilled. First, the airlines receive an "especial" benefit under the Act via the benefits accrued by air travellers, and through the prohibition of excess fees on the carriage of persons or the sale of air transportation. Second, the private right of action would also further the purposes of the Act. Because state and local fees would probably be passed on to customers who might be unable to challenge them, airlines are in a better position to enforce the AHTA, acting as "surrogates" for their customers. Finally, the Airlines argue that the area is one ripe for federal action because the Act itself is an explicit curtailment of state power in the area. The Airlines contend that all of these factors support the conclusion that an implied right of action exists under the AHTA.[3]

The City's response to these arguments is persuasive. While agreeing that the *Cort* analysis is appropriate to determine the existence of a private right of action, the City disagrees with the Airlines' interpretation of the legislative intent behind the AHTA.

First, the City counters the *Evansville* argument. While Congress may have passed the AHTA to strengthen the Airlines' claim in the face of the *Evansville* holding, there is no reason to conclude that administrative review, rather than immediate federal court review, is inconsistent with that goal. Having a federal forum in which to enforce the statute is what matters. In fact, as discussed below, the Secretary is probably in a better position than the district courts to protect the Airlines' rights against undue or discriminatory taxation through a uniform national program.

Second, the City argues that by placing the AHTA in the FAA, Congress intended for it to be subject to the FAA's exclusive remedial provisions, which generally do not include private rights of action.[4] At the time the AHTA was placed within the statutory framework of the FAA, the FAA contained a comprehensive administrative enforcement scheme. The Secretary was authorized to conduct investigations, issue orders and promulgate regulations necessary to carry out the FAA. 49 U.S.C.App. § 1354(a), (b) and (c). The Act also authorizes any person to file a complaint with the Secretary for violation of the FAA. 49 U.S.C.App. § 1482(a). *See, e.g., In re Mexico City Aircrash,* 708 F.2d 400, 407 (9th Cir.1983) (FAA "creates an extensive administrative enforcement scheme."). In turn, the administrative determinations of the Secretary under the FAA, are subject to judicial review by the courts of appeals. 49 U.S.C.App. § 1486(a). *See, e.g., Clark v. Busey,* 959 F.2d 808, 811 (9th Cir. 1992). The FAA provides for enforcement through the district courts primarily by the Secretary and rarely authorizes others to sue in the district court.[5]

Where an elaborate enforcement provision exists, it cannot be assumed that Congress intended to authorize additional private remedies by implication. *Middlesex*

---

3. The Airlines also argue that Congressional silence should be interpreted as support for an implied private right of action. However, "implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best." *Touche Ross,* 442 U.S. at 571, 99 S.Ct. at 2486. In the court's view, the statutory language and the later actions of Congress are inconclusive at best. They do not provide persuasive support for the Airlines' proffered interpretation.

4. It must be assumed that Congress was aware of the existing state of the law when it passes new legislation. *Miles v. Apex Marine Corp.,* 498 U.S. 19, 32, 111 S.Ct. 317, 325, 112 L.Ed.2d 275 (1990).

5. The Secretary may bring an action in district court for the violation of any FAA provision, while the Attorney General may bring suit for violation of § 1514. Only in the case of a violation of § 1371(a) (uncertificated air carriage) may a private party sue in the district court to enforce the provision. 49 U.S.C.App. § 1487(a).

County Sewerage Auth. v. National Sea Clammers Ass'n, 453 U.S. 1, 14, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981). Further, an amendment to an act (as the AHTA is described) falls under the same enforcement scheme as the act itself. *Lovshin v. Department of Navy*, 767 F.2d 826, 842 (Fed.Cir. 1985), *cert. denied* 475 U.S. 1111, 106 S.Ct. 1523, 89 L.Ed.2d 921 (1986); *Republic Steel Corp. v. Costle*, 581 F.2d 1228, 1232 (6th Cir.1978), *cert. denied*, 440 U.S. 909, 99 S.Ct. 1219, 59 L.Ed.2d 457 (1979). The City concludes that because Congress intentionally inserted the AHTA into the FAA without any mention of additional remedies, there is no basis from which to infer congressional intent to create a private right of action.

The policy reasons behind a denial of a private right of action are noteworthy. If there is no private right of action, then any complaints regarding "unreasonable" fees will have to be funneled through the Secretary. The Secretary has broad powers with respect to remedying unreasonable fee systems, whereas the federal courts have limited power.[6] The courts can only conclude that a fee is reasonable or unreasonable—with no latitude to determine, or even suggest, alternative rates. The Secretary would be better able to monitor a consistent nation-wide scheme for determining reasonable fees. Finally, limiting the Airlines to redressing their complaints before the Secretary will eliminate the confusion and potentially inconsistent rulings that undoubtedly would result from the Secretary and federal courts having concurrent jurisdiction over the landing fee question. *See e.g., New England Legal Found. v. Massachusetts Port Auth.*, 883 F.2d 157 (1st Cir.1989).

For these reasons, the court holds that there is no implied private right of action under the AHTA. The Airlines' first claim for relief is thus dismissed for failure to state a claim.

## II. Second Claim for Relief: The Commerce Clause

In their second claim for relief, the Airlines argue that these "unreasonable" landing fees constitute an undue burden on interstate commerce and are not justified by legitimate state or local concerns; thus, they violate the dormant Commerce Clause. The City counters that, "Once Congress acts, courts are not free to review state taxes or other regulations under the dormant Commerce Clause. When Congress has struck the balance it deems appropriate, the courts are no longer needed to prevent States from burdening commerce...." *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 154, 102 S.Ct. 894, 910, 71 L.Ed.2d 21 (1982); *see also Prudential Ins. Co. v. Benjamin*, 328 U.S. 408, 427, 66 S.Ct. 1142, 1153–54, 90 L.Ed. 1342 (1946).[7]

The courts faced with the issue have held that the AHTA has "struck the balance" and thus the only inquiry left open is whether the state statute is consistent with congressional policy (not a Commerce Clause question). *See, e.g., Indianapolis*, 733 F.2d at 1266; *Northwest*, 955 F.2d at 1063; *Niagara*, 658 F.Supp. at 252. The court agrees with those analyses.

---

6. The Supreme Court acknowledged this fact in *Northwest*:
 The Secretary of Transportation is charged with administering the federal aviation laws, including the AHTA. His Department is equipped, as courts are not, to survey the field nationwide, and to regulate based on a full view of the relevant facts and circumstances. If we had the benefit of the Secretary's decision concerning the AHTA's permission for the charges in question, we would accord that decision substantial deference.
 —— U.S. at ——, 114 S.Ct. at 863 (footnotes and citations omitted).

7. Again, the Supreme Court in *Northwest* did not decide this issue. After assuming that the Air-

lines had a right of action under the AHTA, the Court then went on to apply the Commerce Clause analysis of "reasonableness" found in the earlier *Evansville* decision, to the AHTA claim. Having imported this measure of reasonableness into the AHTA, the Court found it unnecessary to duplicate the analysis under the Commerce Clause claim. In coming to that conclusion, the Court stated that "Even if we considered the AHTA's express permission for States' imposition of [reasonable fees] insufficiently clear to rule out judicial dormant Commerce Clause analysis, petitioners' argument would fail." *Northwest*, —— U.S. at ——, 114 S.Ct. at 866 (footnotes omitted). Thus, the question was left open by the Court.

In the AHTA, Congress has established a guideline for the fees that may be charged air carriers. The Supreme Court confirmed that Congress has provided "express permission for States' imposition of [reasonable landing fees]." *Northwest*, —— U.S. at ——, 114 S.Ct. at 866. The standard articulated in the AHTA coupled with the regulatory provisions providing for administrative and judicial review of challenged fees[8] support the conclusion that Congress has affirmatively acted in this area. The court concludes that in exercising its regulatory power, Congress has foreclosed dormant Commerce Clause review. *See Jicarilla Apache Tribe*, 455 U.S. at 154, 102 S.Ct. at 910. Accordingly, the Airlines' second claim for relief under the Commerce Clause fails to state a claim.

### III. *Third Claim for Relief: Chicago Convention and Bilateral Agreements*

The Airlines claim that the increased landing fees violate the Convention on International Civil Aviation, Dec. 7, 1944—Feb. 28, 1945 ("Chicago Convention"), 61 Stat. 1180, 15 U.N.T.S. 295, 19 U.S.T. 7693, and numerous Bilateral Air Service Agreements to which the United States is a party. They contend that the treaties have been violated because the fees "are not just and reasonable, and because they allocate to the airlines more than their fair proportionate share of LAX Costs, and impose charges in excess of LAX Costs...." Amend.Comp., ¶ 91.

#### A. *The Chicago Convention*

Plaintiffs contend that the Chicago Convention creates enforceable rights in the Airlines. In particular, the Airlines contend that Article 15 of the Convention requires that any fees imposed by a party to the Convention must only be for the *use* of the

airports and other facilities and cannot be for the "right of transit over or entry into or exit from" that State. The Airlines' reading of Article 15 distorts its meaning.[9] They put an unnatural emphasis on the word "use" in Article 15 and attempt to tie it to the later prohibition against charges for passing over, entering or exiting a State.

The court disagrees with the Airlines' attempt to characterize Article 15 as a broad regulation of fees. In substance, Article 15 provides that fees imposed by a contracting State may not be higher for a foreign carrier than a domestic carrier. That is, there can be no discrimination against foreign aircraft when it comes to levying fees, whatever they may be. There is no indication that the word "use" in Article 15 is meant to imply that fees charged for the use of airport facilities which are higher than "costs" attributable directly to the airlines are prohibited. The Convention simply does not address this issue. Further, the prohibition against charging for the mere entry into or transit over a country has no relation to the prohibition against charging foreign air carriers more than domestic carriers, which is the context in which the word "use" is employed.

The Airlines have failed to state a claim under the Chicago Convention. The court agrees with the Seventh Circuit's conclusion that the Chicago Convention does not regulate airport fees. *Indianapolis*, 733 F.2d at 1266.

#### B. *The Bilateral Air Service Agreements*

The United States is a party to numerous Bilateral Air Service Agreements ("Bilateral Agreements") entered into for the purpose of promoting commercial airline services between the contracting States. These agree-

---

8. As detailed in 49 U.S.C.App. §§ 1482, 1486.

9. Article 15 states in part:
 Any charges that may be imposed or permitted to be imposed by a contracting State for the use of such airports and air navigation facilities by the aircraft of any other contracting State shall not be higher,

 . . . . .

 (b) As to aircraft engaged in scheduled international air services, than those that would be paid by its national aircraft of the same class engaged in similar international air service.
 After providing for the publication and review of such charges, it continues,
 No fees ... shall be imposed by any contracting State in respect solely of the right of transit over or entry into or exit from its territory of any aircraft of a contracting State or persons or property thereon.

ments apparently grew out of Article 68 of the Chicago Convention. The Airlines represent and the City does not contest that each of these Bilateral Agreements has a provision which approximates the following:

> Each Contracting Party may impose or permit to be imposed just and reasonable charges for the use of public airports and other facilities under its control, provided that such charges shall not be higher than the charges imposed for use by its national aircraft engaged in similar international services.[10]

The Airlines contend that the increased landing fees violate the Bilateral Agreements because the fees are not "just and reasonable". The City argues that the Bilateral Agreements do not confer any private right of action on the Airlines. The Airlines argue that the reasonable fees provision of these agreements is "self-executing" and, therefore, confers upon the Airlines a private right of action to challenge the "unreasonable" fees in court.

■ The determination of whether a treaty is self-executing turns on four factors: (1) the purposes of the treaty and the objectives of its creators; (2) the existence of domestic procedures and institutions appropriate for direct implementation; (3) the availability and feasibility of alternative enforcement methods; and (4) the immediate and long-range social consequences of self- or non-self-execution. *Islamic Republic of Iran v. Boeing Co.*, 771 F.2d 1279, 1283 (9th Cir.1985); *cert. dismissed*, 479 U.S. 957, 107 S.Ct. 450, 93 L.Ed.2d 397 (1986). However, if the parties' intent is clear from the language of the treaty, the court need not evaluate the remaining factors. *American Baptist Churches v. Meese*, 712 F.Supp. 756, 770 (N.D.Cal.1989).

The Airlines contend that an examination of the language of the Bilateral Agreements reveals that they are self-executing. They suggest that the "mandatory" (as opposed to permissive) language of the fees provision is evidence that the treaty is self-executing. However, when viewed in context, as a whole, the only possibly mandatory language in the provision appears after the "just and reasonable" language and relates, as it does in the Chicago Convention, to the prohibition against charging foreign air carriers higher fees than domestic carriers. Thus, that language does not suggest an intent to make this provision of the treaty self-executing.

Further, the extensive remedial provisions in the treaties suggest that it is the parties themselves who are to enforce the treaty. Under these Bilateral Agreements, when a dispute as to the interpretation or application of the treaty arises, the contracting parties are to consult amongst themselves. If the consultation fails then the dispute may be submitted to arbitration according to procedures set out in the treaty. *See, e.g.*, U.S./Canada Treaty, Art. XV. Nothing in these Bilateral Agreements indicates that the contracting parties may resort to their respective judicial systems for relief or that individual airlines are granted a private right of action to enforce supposed treaty rights.[11]

Plaintiffs cite numerous cases in support of their contention that the Bilateral Agreements are self-executing. The strongest of these cases is *Aerovias Interamericanas De Panama, S.A. v. Board of County Comm'rs*, 197 F.Supp. 230 (S.D.Fla.1961), *rev'd on other grounds*, 307 F.2d 802 (5th Cir.1962). In *Aerovias*, the court found that Article 15 of the Chicago Convention, and the corresponding provisions of the Bilateral Agreement in question were self-executing. The court then allowed the plaintiff to go forward with its

---

10. The quoted provision is Article X(a) of the Air Transport Agreement Between the Government of the United States of America and the Government of Canada, Jan. 17, 1966, 17 U.S.T. 201, T.I.A.S. 5972 ("U.S./Canada Treaty").

11. Plaintiffs argue that the fact that there are remedial provisions in treaties has no effect on whether or not the parties have recourse in the judicial system. In support of this argument they cite *Air Canada v. U.S. Dep't of Transp.*, 843 F.2d 1483 (D.C.Cir.1988), which held that the choice of arbitration as a method of dispute resolution is not exclusive. That case is distinguishable in that the agreement in question contained an express provision stating that the availability of diplomatic consultation did not limit the rights of the parties to pursue appropriate remedies in the courts. *Id.* at 1487. There is no like provision in the Bilateral Agreements.

private suit challenging defendants' landing fees. However, *Aerovias* is distinguishable from the case at bench.

In *Aerovias*, the airline's claim was that the airport was discriminating between foreign and domestic air carriers by charging foreign carriers more for the use of airport facilities. The claim was not about the reasonableness of the fees outright. It concerned discrimination against foreign air carriers. To the extent that *Aerovias* may be read as granting a private right of action under the Bilateral Agreements, the court declines to extend it to challenges to the reasonableness of fees, as opposed to discriminatory fees.

The remedial provisions of the Bilateral Agreements initially provide for consultation between the contracting parties (the States) and eventually for international arbitration hearings. There is no evidence that the provision cited by the Airlines was meant to confer any rights on individual airlines. The court concludes that there is no implied private right of action under the Bilateral Agreements which would permit the Airlines judicially to challenge the reasonableness of landing fees.

Accordingly, plaintiffs' third claim for relief, brought under the Chicago Convention and the Bilateral Agreements, must be dismissed for failure to state a claim.

## IV. Fourth Claim For Relief: Preemption Under The Supremacy Clause

Plaintiffs' Fourth Claim for Relief alleges that the City's threat to deprive the Airlines of certain airport privileges if they did not commence paying the increased fees intrudes into an area preempted by federal law in violation of the Supremacy Clause.

Prior to the hearing on the motion to dismiss, the Airlines and the City entered into an Interim Agreement (the "Agreement") concerning the payment of landing fees during the pendency of the Airlines'

challenge to the increased fees. Under the Agreement, the Airlines have paid all previously unpaid landing fees accrued at the increased rate and agree to continue to pay landing fees at the increased rate. These payments were made "under protest." The City has agreed to waive threatened penalties for the failure timely to pay the fees and has agreed not to increase fees again until July, 1994.

As part of the Agreement, the Airlines agreed to sign an LAX Operating Permit which contains a provision that obligates the Airlines to pay the disputed fees under protest. However, if the court determines the City's threat of a lockout to be illegal, the parties have agreed that the provision in the Operating Permit requiring payment under protest would be deleted.

Based on this record, the court, *sua sponte*, raised the issue of whether the Agreement moots the fourth claim for relief and invited the parties to brief the issue.[12]

The Airlines first argue that the Agreement was intended to be the functional equivalent of a preliminary injunction or stipulated standstill—neither of which would moot the claim. However, it is clear that the Agreement is nothing like a preliminary injunction, stipulated or otherwise. A preliminary injunction would have enjoined the City from the complained of behavior—the threatened lockout, without the payment of the contested fees—pending a trial on the merits. Here, under the Agreement, exactly the opposite has happened. Plaintiffs have paid the challenged fees. Once that was done, there was no longer any need to threaten a lockout. The City was induced to drop the threat of a lockout by the payment of the fees.[13]

The Airlines further argue that because the agreement was only *pendente lite*, dismissal for mootness is inappropriate. Their support for this theory is unpersuasive.

---

12. The City has declined to brief the mootness issue, apparently because it has agreed not to contest lack of mootness as a part of the interim settlement.

13. This facet of the case also distinguishes it from one in which there was "voluntary cessation" of the complained of activity. The City ceased its threat only because the threat apparently achieved its goal—payment of the increased fees.

*Northrop Corp. v. McDonnell Douglas Corp.,* 705 F.2d 1030, 1049 (9th Cir.1983), cited in support, is unhelpful because there is no discussion of what sort of stipulation the parties entered into and the Ninth Circuit merely remanded that issue for further development by the district court. The statement plaintiffs rely on is dictum. The other cases plaintiffs cite are distinguishable as involving stipulations pending the appeal of a lower court decision.[14] These cases have no application to the case at bench.

 Finally, the Airlines argue that the preemption claim is not moot for the independent reason that it is one "capable of repetition yet evading review." To fall within the category of a claim capable of repetition yet evading review, the circumstances must be such that either the duration of the disputed activity is too short to be fully litigated or the activity has been abandoned, and there must be a reasonable expectation that the complaining party will be subject to the same action in the future. *E.g., City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 1074–75, 71 L.Ed.2d 152 (1982); *Campesinos Unidos v. United States Dep't of Labor,* 803 F.2d 1063, 1068 (9th Cir.1986).

The circumstances surrounding this case do not constitute those capable of repetition yet evading review. The only reason review will be "evaded" here is because plaintiffs yielded to the disputed activity; they succumbed to the threat of a lockout. If the Airlines had not voluntarily paid the disputed fees, presumably the threat of a lockout (or, indeed, the lockout itself) would be a live issue requiring resolution. That doctrine has never been employed to assert jurisdiction over a claim made moot by a settlement of the parties.

 The court concludes that, while the Agreement clearly does not moot any other claim, it does moot the question of whether the City's threat of a lockout violated the FAA or was otherwise illegal. Because there

is no longer a "live" controversy, under Article III, the court has no subject matter jurisdiction of the fourth claim for relief. *E.g., County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979).

## V. *Fifth Claim for Relief: § 1983*

In their fifth claim, the Airlines allege that the City has acted under color of State law in imposing the unreasonable landing fees. And, because the unreasonable fees violate the AHTA, Commerce Clause, U.S. treaties, and Supremacy Clause, the City has deprived and threatens to deprive plaintiffs of rights, privileges and immunities secured by the Constitution and laws of the United States, in violation of 42 U.S.C. § 1983.

### A. *The AHTA*

The Airlines argue that the fact that there is no private right of action under the AHTA does not foreclose a claim under § 1983. They contend that the standard for finding a right of action under § 1983 is broader than that for implying a right of action pursuant to the underlying statute. Citing *Coos Bay Care Center v. Oregon Dep't of Human Resources,* 803 F.2d 1060, 1062 (9th Cir.1986),[15] the Airlines submit that where Congress has not expressly proscribed private rights of action, relief under § 1983 must be available.

 Relying on *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 101 S.Ct. 2615, the City argues that Congress foreclosed private enforcement of the AHTA in the enactment itself, and that the AHTA does not create enforceable rights under § 1983. Where the federal law that was allegedly violated provides a comprehensive remedial scheme, that scheme may not be avoided by recourse to § 1983. *Id.* at 20, 101 S.Ct. at 2626. While the AHTA does not have its own remedial scheme, the FAA does. Many courts have found that the FAA provides a sufficiently

---

14. *E.g., Bituminous Coal Operators' Ass'n, Inc. v. Connors,* 867 F.2d 625 (D.C.Cir.1989); *United States ex rel. H & S Indus., Inc. v. Rich Co., Inc.,* 525 F.2d 760 (7th Cir.1975).

15. *Coos Bay* was *vacated and remanded* by the Supreme Court. 484 U.S. 806, 108 S.Ct. 52, 98 L.Ed.2d 17 (1987). Therefore, it is not binding precedent. However, the Court accepts this citation as generally representative of Circuit law.

comprehensive scheme to foreclose a § 1983 action. *See e.g., Air Transport Ass'n v. Public Utilities Comm'n,* 833 F.2d 200, 207 (9th Cir.1987), *cert. denied,* 487 U.S. 1236, 108 S.Ct. 2904, 101 L.Ed.2d 936 (1988); *New England Legal Found.,* 883 F.2d at 176; *Montauk–Caribbean Airways, Inc. v. Hope,* 784 F.2d 91, 98 (2nd Cir.), *cert. denied,* 479 U.S. 872, 107 S.Ct. 248, 93 L.Ed.2d 172 (1986). The Airlines point out that none of these cases discusses the AHTA specifically. However, the focus, should be on the comprehensiveness of the remedial scheme. *Almond Hill School v. United States Dep't of Agriculture,* 768 F.2d 1030, 1035 (9th Cir. 1985), *citing Middlesex,* 453 U.S. at 20, 101 S.Ct. at 2626. And given this court's conclusion that the AHTA shares the remedial scheme with the FAA, the general FAA cases are persuasive. Thus, if the § 1983 action cannot stand under the general provisions of the FAA, then it cannot stand under the AHTA. There can be no § 1983 claim predicated on the alleged violation of the AHTA.

### B. *Commerce Clause, Treaties and Supremacy Clause*

Likewise, no § 1983 claim can be predicated on the dormant Commerce Clause because of Congress' occupation of the field with the AHTA. Under these circumstances, the dormant Commerce Clause provides no enforceable rights and thus no basis for a § 1983 claim. Nor can the Chicago Convention and the Bilateral Agreements be the basis for a § 1983 claim because, as the court has held, in this context, those treaties confer no individual rights on the Airlines. There can be no deprivation of a right which does not exist. Likewise, the mootness of the Airlines' Supremacy Clause claim also renders any § 1983 claim moot. Thus, to the extent that the § 1983 claim is predicated on violations of the dormant Commerce Clause, the treaties, and the Supremacy Clause, it must be dismissed.

### CONCLUSION

The Court concludes that the City's motion to dismiss all claims for relief in the First Amended Complaint should be **GRANTED.**

Accordingly, an Order of Dismissal consistent herewith shall be entered.