[No. B116038. Second Dist., Div. Six. June 16, 1998.]

BURBANK-GLENDALE-PASADENA AIRPORT AUTHORITY, Plaintiff and Appellant, v.
CITY OF BURBANK, Defendant and Respondent.

1218

1220

**COUNSEL**

McDermott, Will & Emery, Richard K. Simon, Thomas A. Ryan, Ferguson, Case, Orr, Paterson & Cunningham and Michael W. Case for Plaintiff and Appellant.

Dennis A. Barlow, City Attorney, Terry B. Stevenson, Assistant City Attorney, Cutler & Stanfield, Perry M. Rosen, Peter J. Kirsch and Dana C. Nifosi for Defendant and Respondent.

**OPINION**

**YEGAN, J.**—Burbank-Glendale-Pasadena Airport Authority (Airport Authority) appeals from the judgment entered after the trial court granted the City of Burbank's (City) motion for summary judgment in this action challenging the City's transient parking tax (TPT). After reviewing the matter de novo, (*Villa v. McFerren* (1995) 35 Cal.App.4th 733, 741 [41 Cal.Rptr.2d 719]), we conclude as a matter of law that the TPT violates neither the supremacy

clause (U.S. Const., art. VI, cl. 2), nor the commerce clause (U.S. Const., art. I, § 8, cl. 3) of the federal Constitution, that it does not violate the City's charter or Government Code section 53723, and that it does not breach the joint powers agreement which created the Airport Authority. Accordingly, we affirm.

*Facts*

In December 1995, the City established the TPT by approving Ordinance No. 3426 (Burbank Mun. Code, art. 19, 14). The TPT took effect in January 1996 and imposes a 10 percent tax on the fee paid by the patron of a valet parking service, or the occupant of a parking space that is used for less than one calendar month. The tax is paid by the occupant, but is collected by the parking lot operator and remitted to the City. Operators who fail to collect or remit the tax may be required to pay it, and a penalty, themselves. Parking at medical facilities, metered spaces and monthly parking spaces is exempt from the TPT.

Fifteen parking lots in the City have paid the TPT since it became effective. Only three of those lots are located within two miles of the Burbank-Glendale-Pasadena Airport. Parking lots at or near the airport, however, generate about 90 percent of TPT revenues. The majority of these revenues are attributable to Airport Authority parking lots. Over 50 percent of the Airport Authority's operating income is derived from its parking lots. According to the Airport Authority, parking revenue increases as the number of travelers using the airport increases.

The Airport Authority contends that the TPT violates the supremacy clause of the federal constitution because it is preempted by the Anti-Head Tax Act (AHTA) (49 U.S.C.A. § 40116), a federal statute that prohibits state and local taxes on air travel. Because it believes the TPT unfairly discriminates against air travelers, the Airport Authority contends that the tax also violates the commerce clause. The Airport Authority also contends that, under the city charter and Government Code section 53723, it is entitled to a refund of TPT paid before City voters approved the tax in April 1997. Finally, the Airport Authority contends the TPT results in a diversion of airport revenues to the City, in breach of the Joint Powers Agreement between the cities of Burbank, Glendale and Pasadena that created the Airport Authority.

*The Supremacy Clause and Federal Preemption*

The AHTA provides that state and local governments, "may not levy or collect a tax, fee, head charge, or other charge on— [¶] (1) an

individual traveling in air commerce; [¶] (2) the transportation of an individual traveling in air commerce; [¶] (3) the sale of air transportation; or [¶] (4) the gross receipts from that air commerce or transportation." (49 U.S.C.A. § 40116(b).)[1] State and local governments also may not "levy or collect a tax, fee, or charge . . . exclusively upon any business located at a commercial service airport . . . other than a tax, fee, or charge wholly utilized for airport or aeronautical purposes." (*Id.*, subd. (d)(2)(A)(iv).) Other taxes are, however, permitted. For example, the AHTA allows local governments to levy or collect, "taxes (except those enumerated in subsection (b) of this section), including property taxes, net income taxes, franchise taxes, and sale or use taxes on the sale of goods or services . . . ." (*Id.*, subd. (e)(1).)

It is undisputed that the Airport Authority's parking lots generate almost all of the revenue received by the City from the TPT. Because many customers of those parking lots are air travelers, the Airport Authority argues that the TPT is an indirect "head tax" on them. The Airport Authority concludes that the TPT is preempted by the AHTA and, thus, violates the supremacy clause.

In deciding whether the TPT is preempted, we begin with the presumption "that Congress did not intend to preempt areas of traditional state regulation." (*Metropolitan Life Ins. Co.* v. *Massachusetts* (1985) 471 U.S. 724, 740 [105 S.Ct. 2380, 2389, 85 L.Ed.2d 728].) Because the AHTA "unambiguously forbids" the imposition of specific taxes on individuals traveling in air commerce (*Aloha Airlines* v. *Director of Taxation* (1983) 464 U.S. 7, 12 [104 S.Ct. 291, 294, 78 L.Ed.2d 10]), our task is to determine whether the TPT imposes a tax that is forbidden under 49 United States Code section 40116(b), or one that is permitted under subdivision (e). "Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted." (*Cipollone* v. *Liggett Group, Inc.* (1992) 505 U.S. 504, 517 [112 S.Ct. 2608, 2618, 120 L.Ed.2d 407, 423]; *Metropolitan Life Ins. Co.* v. *Massachusetts, supra,* 471 U.S. at p. 738 [105 S.Ct. at p. 2388].)

The AHTA "pre-empts a limited number of state taxes, including gross receipts taxes imposed on the sale of air transportation or the carriage of persons traveling in air commerce." (*Aloha Airlines* v. *Director of Taxation, supra,* 464 U.S. at p. 12, fn. 6 [104 S.Ct. at p. 294].) State and local

[1]As relevant here, the term "air commerce" means interstate or foreign transportation of passengers, property or mail by aircraft for compensation, "the operation of aircraft within the limits of a Federal airway, or the operation of aircraft that directly affects, or may endanger safety in, foreign or interstate air commerce." (49 U.S.C.A. § 40102(a)(3), (22), (24).)

governments remain free to impose taxes where the tax rate is based on criteria other than those enumerated in 49 United States Code section 40116(b). (*United Air Lines, Inc.* v. *County of San Diego* (1991) 1 Cal.App.4th 418, 430-431 [2 Cal.Rptr.2d 212].) The fact that a particular tax may increase the cost of operating an airport or airline, or that tax revenues may increase as the number of flights increases, is not determinative. (*Alaska Airlines, Inc.* v. *Department of Food & Agriculture* (1995) 33 Cal.App.4th 506, 513-514 [39 Cal.Rptr.2d 426]; *United Air Lines, Inc.* v. *County of San Diego, supra*, 1 Cal.App.4th at p. 431.) Instead, for a tax to be prohibited, "it must bear some rational relation to persons or the carriage of persons traveling in air commerce. A fee which is based on other criteria is permitted, although passed on to passengers in the form of increased fares." (*Alaska Airlines, Inc.* v. *Department of Food & Agriculture, supra*, 33 Cal.App.4th at p. 514.)

Under these standards, the TPT complies with the federal statute and therefore is not preempted. First, the TPT is not a tax on air commerce. It is a tax on the fee paid for short-term parking. The AHTA does not apply to taxes on airport ground transportation services, such as parking facilities. (*Alamo Rent-A-Car, Inc.* v. *City of Palm Springs* (9th Cir. 1991) 955 F.2d 30, 31, fn. 1; *Salem Transp. Co.* v. *Port Authority of N.Y. & N.J.* (S.D.N.Y. 1985) 611 F.Supp. 254, 257.) Second, because the TPT is paid by the customer, not the parking lot operator, it is analogous to the "sales or use taxes" expressly permitted by the AHTA. (49 U.S.C.A. § 40116(e)(1).) Third, the TPT is not imposed exclusively upon airport businesses, because it is collected by all qualified parking lots in the City.

The Airport Authority argues the TPT constitutes an indirect tax on air travelers because 90 percent of the tax is paid by customers of airport parking lots, and because the amount of tax collected by the Airport Authority increases as the number of air travelers using the airport increases. These facts do not demonstrate a violation of the AHTA. The TPT must be paid by anyone who parks in a qualified parking lot, regardless of whether that person ever boards an airplane. Thus, someone who parks at the airport to transact business there, or to meet a friend who works there, pays the same tax as an air traveler. Because the TPT is based on parking, not air travel, it is not a direct or indirect head tax on air travelers.

*Commerce Clause*

The Airport Authority urges us to hold that the TPT violates the commerce clause because the City intended for the burden of the TPT to fall

disproportionately on air travelers. According to the Airport Authority, this discriminatory intent was revealed in a staff memorandum written before the TPT was adopted and in a press release distributed by the City after its victory on the motion for summary judgment.[2]

Like the trial court. we decline to rule the TPT unconstitutional based solely on the alleged discriminatory motives of the city council members who supported it. ■ "It is a familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive." (*United States* v. *O'Brien* (1968) 391 U.S. 367, 383 [88 S.Ct. 1673, 1682, 20 L.Ed.2d 672]; see also *City and County of San Francisco* v. *Cooper* (1975) 13 Cal.3d 898, 912 [120 Cal.Rptr. 707, 534 P.2d 403] [citing the "firmly established judicial principle" that " 'a legislative act cannot be [nullified] because, in the opinion of a court, it was or might have been the result of improper considerations.' "].) Instead, the focus of our inquiry must be, "on the actual effect of the enactments, not upon the motivation which led the [city council members] to behave 'as they did." (*Palmer* v. *Thompson* (1971) 403 U.S. 217, 225 [91 S.Ct. 1940, 1945, 29 L.Ed.2d 438, 445].)

■ In rare instances, the constitution may forbid legislators to act with a specific motive or intent. (See, e.g., *Board of Education* v. *Allen* (1968) 392 U.S. 236, 243-244 [88 S.Ct. 1923, 1926, 20 L.Ed.2d 1060, 1065-1066] [education policies must have " 'a secular legislative purpose' " to pass First Amendment scrutiny].) The commerce clause, however, is not such a provision. To the contrary, the discrimination it prohibits is measured by the economic impact of a local regulation, not the evil motives of local legislators. (*Merrion* v. *Jicarilla Apache Tribe* (1982) 455 U.S. 130, 157-158 [102 S.Ct. 894, 910, 71 L.Ed.2d 21, 42] [tax discriminates against interstate commerce where it imposes different tax rates on minerals shipped in intra- and interstate commerce]; *Commonwealth Edison Co.* v. *Montana* (1981) 453 U.S. 609, 618 [101 S.Ct. 2946, 2953, 69 L.Ed.2d 884, 894-895] [Rejecting argument that "a state tax must be considered discriminatory for purposes of the Commerce Clause if the tax burden is borne primarily by out-of-state consumers."].)

---

[2]The staff report acknowledges that a TPT "would primarily impact Airport users." It notes that TPT revenue would replace some property tax revenue lost when airport expansion removed real estate from the City's tax base, and that it would provide "a tangible fiscal gain to the City to help offset" the burden imposed on City streets and services by airport users and other short-term parkers.

The press release quotes one of the City's attorneys who praised the trial court's analysis on the motion for summary judgment and concluded: " 'Many other cities and counties around the country have similar taxes to mitigate the negative impacts of having an airport in their community. The judge's ruling upholds the validity of such taxes and sets a precedent for elsewhere.' "

Finally, we note that the Airport Authority's only evidence of the City's alleged discriminatory motive is the staff report and the press release. Neither item is admissible to establish the City's legislative intent in enacting the TPT. (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 742 [248 Cal.Rptr. 115, 755 P.2d 299] [statement in staff memorandum to legislative committee "is not admissible as an indication of the Legislature's intent in ultimately enacting the measure."]; *People* v. *Overstreet* (1986) 42 Cal.3d 891, 900 [231 Cal.Rptr. 213, 726 P.2d 1288] [letter from author of statute to Governor who signed it, "may not be used to construe the statute . . . ," because "a legislator's statements as to his motives or understandings are not admissible."].)

Where, as here, Congress affirmatively limits local taxing authority, "courts are not free to review state taxes or other regulations under the dormant Commerce Clause. When Congress has struck the balance it deems appropriate, the courts are no longer needed to prevent States from burdening commerce . . . ." (*Merrion* v. *Jicarilla Apache Tribe, supra,* 455 U.S. at p. 154 [102 S.Ct. at p. 910, 71 L.Ed.2d at p. 40].) Thus, the question whether the TPT violates the commerce clause depends not on the City's "intent," but on the terms of the AHTA.

Congress has expressly provided that states and their political subdivisions may levy "sales or use taxes on the sale of goods or services . . ." at airports. (49 U.S.C.A. § 40116(e)(1).) We have already determined that the TPT is the equivalent of a sales or use tax on parking facilities. Because it falls within the category of taxes expressly permitted by the AHTA, the TPT does not violate the commerce clause.

Moreover, the TPT would pass muster even under a traditional dormant commerce clause analysis. (*Merrion* v. *Jicarilla Apache Tribe, supra,* 455 U.S. at p. 156 [102 S.Ct. at p. 911, 71 L.Ed.2d at p. 41].) "Under the test announced by the United States Supreme Court in *Complete Auto Transit, Inc.* v. *Brady* (1977) 430 U.S. 274, 279 [51 L.Ed.2d 326, 331, 97 S.Ct. 1076], a local tax does not offend the commerce clause if it is applied to an activity which has a substantial nexus with the taxing jurisdiction, is fairly apportioned, does not discriminate against interstate commerce, and is reasonably related to services provided by the taxing jurisdiction." (*Park 'N Fly of San Francisco, Inc.* v. *City of South San Francisco* (1987) 188 Cal.App.3d 1201, 1215-1216 [234 Cal.Rptr. 23].)

The TPT applies to an activity which has a substantial nexus to the City because the parking lots are located within the City and customers drive

over City streets to reach them. The tax is fairly apportioned because the entire taxable event—paid short-term parking—occurs within the City. (188 Cal.App.3d at p. 1215.) The TPT does not discriminate against interstate commerce because all transient parking facilities within the City, including those not patronized by air travelers, pay the tax. Finally, the tax is reasonably related to services provided by the City because customers use City streets to reach the parking lots that are subject to the tax. (*Id.* at pp. 1215-1216 see also *Commonwealth Edison Co.* v. *Montana, supra*, 453 U.S. at pp. 625-626 [101 S.Ct. at p. 2958].)

### Government Code Section 53723

■ Government Code section 53723 provides: "No local government, or district, . . . may impose any general tax unless and until such general tax is submitted to the electorate of the local government, . . . and approved by a majority vote of the voters voting in an election on the issue." Until 1996, the statute did not apply to general taxes imposed by charter cities. (*California Fed. Savings & Loan Assn.* v. *City of Los Angeles* (1991) 54 Cal.3d 1, 11-12 [283 Cal.Rptr. 569, 812 P.2d 916].)

In November 1996, California voters approved Proposition 218, adding article XIII C to the state Constitution. Section 2 of article XIII C provides: "(b) No local government may impose, extend or increase any general tax unless and until that tax is submitted to the electorate and approved by a majority vote. . . . [¶] (c) Any general tax imposed, extended or increased, without voter approval by any local government on or after January 1, 1995, and prior to the effective date of this article, shall continue to be imposed only if approved by a majority vote of the voters voting in an election on the issue of the imposition, which election shall be held [by November 6, 1998]." In practical effect, then, article XIII C requires charter cities to obtain voter approval of general taxes first imposed or increased after January 1, 1995.

Burbank is a charter city. Section 41 of its charter requires the City to "provide a system for the assessment, levy, collection and equalization of taxes, which as nearly as may be, shall conform to the system provided by the general laws of the state." The TPT was first imposed on January 20, 1996. On April 8, 1997, City voters approved it. The Airport Authority contends it is entitled to a refund for TPT paid between January 1996 and April 1997 because section 41 of the city charter obligated the City to comply with Government Code section 53723 even before Proposition 218 was enacted. Because the City did not immediately submit the TPT for voter

approval, the Airport Authority contends it was unenforceable before the 1997 election.

We are not persuaded. The City's charter requires its tax ordinances to conform "as nearly as may be" to the tax system established by the state's general laws. Until article XIII C was added to the Constitution by Proposition 218, however, that system did not require the City to obtain voter approval for new general taxes. Accordingly, the TPT was valid on its effective date. Because City voters approved the tax in April 1997, it remains valid under article XIII C.

### Joint Powers Agreement

In 1977, the cities of Burbank, Pasadena and Glendale entered into a Joint Powers Agreement to create the Airport Authority and its governing body, the Airport Authority Commission (Commission). Each city appoints three members to the Commission. The Joint Powers Agreement requires that Commission decisions "with respect to the payment of surplus revenues" be approved by a majority of the members representing each city. In addition, the Airport Authority is authorized to make "payment from surplus revenues to any of the [cities] . . . , only to the extent that such payments are not prohibited . . . ," by a Commission resolution or an indenture.

The TPT is to be paid by customers, not operators of parking lots, and it is to be added to the fee that would otherwise be charged for the use of a parking space. Operators are required to collect the tax and may be liable for tax payments and penalties if they do not. Contrary to the Airport Authority's argument, this feature of the TPT does not breach the Joint Powers Agreement by diverting airport revenues to the City without Commission approval. So long as the Airport Authority collects the TPT from its customers, as contemplated by the ordinance, none of its revenues will be used to pay the tax.

The judgment is affirmed. Costs to respondent.

Stone (S. J.), P. J., and Coffee, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 16, 1998.