48 A.3d 1113

AVIS BUDGET GROUP, INC., AND THE HERTZ CORPORATION, PLAINTIFFS–APPELLANTS, v. CITY OF NEWARK, CITY COUNCIL OF THE CITY OF NEWARK, MAYOR OF THE CITY OF NEWARK, AND DIRECTOR OF FINANCE OF THE CITY OF NEWARK, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued March 13, 2012—Decided August 1, 2012.

Before Judges CARCHMAN, FISHER and BAXTER.

*John Longstreth* (*K & L Gates, LLP* ) of the District of Columbia bar, admitted pro hac vice, argued the cause for appellants (*Mark D. Marino* and *Mr. Longstreth,* of counsel and on the brief; *Daniel A. Suckerman,* on the brief).

*Michael R. Griffinger* argued the cause for respondents (*Gluck-Walrath and Gibbons, P.C.,* attorneys; *Mr. Griffinger, Robert C. Brady, Fruqan Mouzon, Brian P. McElroy, David A. Clark* and *Antonella Colella,* on the brief).

The opinion of the court was delivered by

CARCHMAN, P.J.A.D.

This appeal requires us to consider the validity of Ordinance 6PFS–I 050510 (the Ordinance), enacted by defendant City of Newark (the City),[1] levying a tax on all car rental transactions within the City's Second and Third Industrial Zones, the latter of which encompasses parts of Newark Liberty International Airport (the Airport). Plaintiffs Avis Budget Group (Avis) and Hertz Corporation (Hertz) challenge the Ordinance, asserting that it violates the Anti–Head Tax Act (AHTA), 49 *U.S.C.A.* § 40116, as well as 42 *U.S.C.A.* § 1983 and the Commerce Clause of the United States Constitution, Article I, Section 8, Clause 3.

We conclude that the Ordinance is not a discriminatory tax or otherwise in violation of the AHTA or the dormant Commerce Clause. We determine that the Ordinance is a valid exercise of municipal authority. Accordingly, we affirm.

I.

On July 28, 2009, the New Jersey Legislature enacted the New Jersey Economic Stimulus Act of 2009, *N.J.S.A.* 40:48H–1 to –9, which, among other things, granted authority to certain municipalities to tax motor vehicle rental transactions taking place in

---

[1] Additional defendants include the City Council of the City of Newark, Mayor of the City of Newark and Director of Finance of the City of Newark.

designated industrial zones, specifically, zones within which commercial airports are located. *N.J.S.A.* 40:48H–2. The stated purpose of the legislation and the tax was to finance the redevelopment of certain municipalities. *N.J.S.A.* 40:48H–1.

*N.J.S.A.* 40:48H–2, the operative provision granting authority to tax, provides in relevant part:

> a. A municipality having a population in excess of 100,000 and within which is located a commercial airport which provides for a minimum of 10 regularly scheduled commercial airplane flights per day, or a municipality in which any portion of such an airport is located, by ordinance, may impose a tax on the rental of motor vehicles on such rental transactions that occur within a designated industrial zone of the municipality. Such tax shall be imposed on the person, corporation, or other legal entity that is permitted the use of a motor vehicle that it does not own for a period of time that is less than one year, in exchange for the payment of a fee, and shall be collected on behalf of the municipality by the person collecting such rental fee, in accordance with such procedures as shall be established in the ordinance imposing the tax.

> The local motor vehicle rental tax rate imposed under an ordinance adopted pursuant to this section shall not exceed five percent of the total amount of the fee charged for the rental of the motor vehicle, excluding any taxes and surcharges.

The City, which has a population in excess of 100,000 and "within which [the Airport] is located," qualified under this provision. On April 27, 2010, the City Council, pursuant to *N.J.S.A.* 40:48H–2, introduced an ordinance to tax car rental transactions. During a public meeting to consider the proposed ordinance, council members informed the public that the Ordinance was intended to tax "outsiders" at the Airport but not Newark residents. Following the meeting, the Council passed the Ordinance, and the Mayor signed it into law on May 7, 2010. It was published on May 14, 2010.

The Ordinance provides in relevant part:

10:22A–3. IMPOSITION OF MOTOR VEHICLE RENTAL TAX.

> There is hereby imposed on the person, corporation or other legal entity that is permitted the use of a motor vehicle that it does not own for a period of time that is less than one year, in exchange for the payment of a fee, a tax of five (5%) percent on the fee charged for the rental of such motor vehicle, excluding any taxes and surcharges, in respect of rental transactions that occur within the industrial zone. This tax is in addition to any other taxes or surcharges.

10:22A–4. DESIGNATION OF INDUSTRIAL ZONE.

a. The City hereby designates the following portion of the City as an "industrial zone" for purposes of the motor vehicle rental tax authorized by the Act and this chapter, such portion not exceeding, in the aggregate, fifty percent (50%) of the territory of the City: All of the territory within the City which is, as of the effective date of this ordinance, located [within] the "Second Industrial District" and the "Third Industrial District[,]" [ ] as such areas are established by Title XL, Chapter 2 of the Newark Municipal Code. The area so designated as an industrial zone under this paragraph a. shall not be altered by any subsequent revision of the City's zoning districts, but rather shall be amended only by an ordinance expressly amending this ordinance in accordance with the [A]ct.

b. The City hereby determines that the industrial zone designated in paragraph a. of this Section 10:22A–4 of the City constitutes an area having, or intended to have, predominantly industrial, port, airport, and related uses.

The Third Industrial Zone encompasses parts of the Airport and the Port Newark Marine Terminal. All of the ten rental car companies that are currently affected by the Ordinance are located within the Third Industrial Zone. Plaintiffs are two of the ten affected companies.

Plaintiffs challenged the validity of the Ordinance in the Law Division, asserting that it violated State due process rights, was arbitrary, capricious and unreasonable, and was contrary to the AHTA and the Commerce Clause. At the hearing on the cross-motions for summary judgment, the parties focused on whether the tax violated the AHTA. The City argued that the court could not consider the issue since there was no private right of action to enforce the AHTA. On the merits, it claimed that the Ordinance did not exclusively affect Airport businesses because three rental car companies located in the Third Industrial Zone were not located "at the Airport." Plaintiffs countered that two of the referenced "companies" were actually Avis parking lots where no rental transactions occurred, and were unaffected by the tax, and the third, Action Car Rental, was "at the Airport" because it serviced the Airport by shuttle bus from an Airport hotel.

In a written opinion, Judge Michael R. Casale rejected the City's claim that plaintiffs did not have a private right of action to enforce the AHTA, relying on *Interface Group, Inc. v. Massachusetts Port Authority*, 816 *F*.2d 9, 16 (1st Cir.1987), and *Northwest Airlines, Inc. v. County of Kent*, 955 *F*.2d 1054, 1058 (6th Cir.

1992), *aff'd*, 510 *U.S.* 355, 114 *S.Ct.* 855, 127 *L.Ed.*2d 183 (1994) (deciding the questions presented on other grounds and not reaching the issue of the implied right of action). He rejected contrary decisions by the Seventh and Tenth Circuits in *Southwest Air Ambulance, Inc. v. City of Las Cruces*, 268 *F.*3d 1162, 1169 (10th Cir.2001), and *Miller Aviation v. Milwaukee County Board of Supervisors*, 273 *F.*3d 722, 729 (7th Cir.2001). However, since plaintiffs averred violations of 42 *U.S.C.A.* § 1983 in the complaint, the trial court relied on *Southwest, supra*, 268 *F.*3d at 1176, to conclude that plaintiffs were not precluded from either enforcing the AHTA or challenging the Ordinance.

Turning to the merits, the judge addressed the issue of whether the Ordinance violated the AHTA. Citing *Burbank–Glendale–Pasadena Airport Authority v. City of Burbank*, 64 *Cal.App.*4th 1217, 76 *Cal.Rptr.*2d 297, 298 (1998), the judge concluded that the Ordinance did not offend the AHTA:

> Here, the tax is not on air commerce; it is on the fee paid for renting a car. Second, the tax is paid by the customer, not the businesses. Third, the tax is not imposed exclusively on airport businesses, but rather it must be paid by any rental car facility that is open or will open in the qualified zones. Finally, the tax is payable by anyone who rents a car in the designated zones, not only air travelers[;] and air travelers who wish to avoid the tax can travel outside of the industrial zones and rent a car elsewhere. The tax at issue herein is very similar to the tax upheld by the California Court of Appeals [in *Burbank*] and is the type of tax authorized by 4[9] *U.S.C.[A.]* § 40116(e)(1).

The court neither found a violation of the AHTA, nor a violation of the Commerce Clause. The judge held: (1) where Congress has legislated, as it did in enacting the AHTA, courts need not determine whether state action authorized by the statute has violated the Commerce Clause; and (2) the statements City Council members made during the public meeting did not affect the Commerce Clause analysis when the City enacted the Ordinance "in strict compliance with ... [*N.J.S.A.* 40:48H–2]." Finally, the judge determined that the City Council followed proper procedures in enacting the Ordinance, and the Ordinance neither offended due process nor was arbitrary, capricious or unreason-

able. The court granted the City's motion for summary judgment and dismissed plaintiffs' complaint. This appeal followed.

## II.

The City reiterates its argument that even if the tax violates the AHTA, dismissal must be affirmed because there is no private right of action to enforce the AHTA. Plaintiffs counter that even if there is no private right of action, an AHTA violation may be remedied under 42 *U.S.C.A.* § 1983.

That the AHTA permits a private right of action is no longer a viable argument. The AHTA is within the regulatory purview of the Department of Transportation under the direction of the Secretary of Transportation (the Secretary). *See Northwest Airlines, Inc. v. Cnty. of Kent*, 510 *U.S.* 355, 366–67, 114 *S.Ct.* 855, 863, 127 *L.Ed.*2d 183, 195 (1994) (observing that the "Secretary of Transportation is charged with administering ... the AHTA"); *Township of Tinicum v. U.S. Dep't of Transp.*, 582 *F.*3d 482, 484 (3d Cir.2009) (same); *Miller, supra*, 273 *F.*3d at 729–30 (same); *Southwest, supra*, 268 *F.*3d at 1169–70 (same). Because the AHTA is encompassed in the Federal Aviation Act (FAA),[2] alleged violations of the AHTA are remedied through an administrative process initiated by filing a complaint with the Secretary. 49 *U.S.C.A.* § 46101. *See also* 14 *C.F.R.* 16.1 (providing that the FAA will determine disputes under AHTA except for challenges to fees by air carriers against airport proprietors). · Determinations by the Secretary on questions involving the AHTA may be appealed to a federal district court. 49 *U.S.C.A.* § 46110.

The First and Sixth Circuits have held that Congress intended to create a private right of action in the former AHTA, 49 *U.S.C.A.* § 1513, based on the fact that that statute lacked an

---

[2] Congress enacted the FAA in 1958. Federal Aviation Act of 1958(FAA), *Pub.L.* No. 85–726, 72 *Stat.* 731 (1958). In 1994, Congress restructured the FAA through the Federal Aviation Authorization Act (FAAA). *Pub.L.* No. 103–305, 108 *Stat.* 1569 (1994).

administrative enforcement scheme. *Interface, supra,* 816 *F.*2d at 16; *Northwest Airlines, supra,* 955 *F.*2d at 1058. The United States Supreme Court subsequently granted certiorari in *Northwest Airlines;* although it did not consider whether the AHTA created private rights of action, the Court disagreed with the First and Sixth Circuits' construction of the AHTA when it observed that the AHTA was encompassed by the FAA, which statute reflected an administrative enforcement scheme. *Northwest Airlines, supra,* 510 *U.S.* at 366–67, 114 *S.Ct.* at 863, 127 *L.Ed.*2d at 195.

The Seventh and Tenth Circuits went further in rejecting *Interface* and *Northwest Airlines.* These courts held that since the AHTA is included in the FAA,[3] Congress intended for public enforcement of the AHTA and did not create a private right of action. *Miller, supra,* 273 *F.*3d at 729–31; *Southwest, supra,* 268 *F.*3d at 1169–70. Courts that have considered the issue since the Supreme Court's decision in *Northwest Airlines* have followed *Southwest* and *Miller. See Air Transp. Ass'n of Am. v. City of Los Angeles,* 844 *F.Supp.* 550, 555 (C.D.Cal.1994) (concluding that AHTA lacks private right of action); *Susquehanna Area Reg'l Airport Auth. v. Middletown Area Sch. Dist.,* 918 *A.*2d 813, 816 (Pa.Cmwlth.2007) (same).

■ Other courts have rejected the claim that the AHTA may be enforced in state court under Section 1983 based on the

---

[3] The First Circuit also found that Congress did not intend to create private rights of action within the FAA. *Bonano v. E. Caribbean Airline Corp.,* 365 *F.*3d 81, 84–86 (1st Cir.2004). *Bonano* is consistent with holdings of the Second, Third, Ninth and Tenth Circuits that the FAA does not contain private rights of action. *Schmeling v. NORDAM,* 97 *F.*3d 1336, 1344 (10th Cir.1996); *G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Serv., Inc.,* 958 *F.*2d 896, 901–02 (9th Cir.1992), *cert. denied,* 508 *U.S.* 959, 113 *S.Ct.* 2927, 124 *L.Ed.*2d 678 (1993); *Montauk–Caribbean Airways, Inc. v. Hope,* 784 *F.*2d 91, 97 (2d Cir.), *cert. denied,* 479 *U.S.* 872, 107 *S.Ct.* 248, 93 *L.Ed.*2d 172 (1986); *Wolf v. Trans World Airlines, Inc.,* 544 *F.*2d 134, 137–38 (3d Cir.1976), *cert. denied,* 430 *U.S.* 915, 97 *S.Ct.* 1327, 51 *L.Ed.*2d 593 (1977). *See also Enyeart v. Minnesota,* 408 *F.Supp.*2d 797, 806–07 (D.Minn.2006), *aff'd,* 218 *Fed.Appx.* 560 (8th Cir.2007) (dismissing a complaint on the grounds that there is no private right of action in the FAA).

premise that the FAA provides a comprehensive remedial scheme for AHTA violations that is sufficient to foreclose Section 1983 actions. *See, e.g., New England Legal Found. v. Mass. Port Auth.,* 883 *F.*2d 157, 176 (1st Cir.1989); *Air Transp. Ass'n of Am. v. Public Util. Comm'n,* 833 *F.*2d 200, 207 (9th Cir.1987), *cert. denied,* 487 *U.S.* 1236, 108 *S.Ct.* 2904, 101 *L.Ed.*2d 936 (1988); *Montauk–Caribbean Airways, supra,* 784 *F.*2d at 98; *Air Transp. Ass'n, supra,* 844 *F.Supp.* at 559–60. Even if a violation of the AHTA could be remedied under 42 *U.S.C.A.* § 1983, a party would be required to assert a violation of a federal right, not merely a federal law, "to avail himself [or herself] of [Section] 1983." *Southwest, supra,* 268 *F.*3d at 1173. In *Southwest,* the Tenth Circuit held that the plaintiff airline could enforce the AHTA under Section 1983 because state and municipal taxation of airlines based on gross receipts, a practice prohibited by the AHTA, would violate a federal right afforded to airlines to be free of those taxes. *Id.* at 1173–74.

■ *Southwest* does not support a finding that airport businesses have a federal right under the AHTA. Airport businesses have no right to be totally free from state or local taxes based on gross receipts, and they remain subject to non-exclusive taxes. In sum, we will not apply *Southwest* to car rental companies at the Airport and find no basis for diverging from the overwhelming authority holding that the AHTA may not be enforced in a suit under 42 *U.S.C.A.* § 1983.

■ The AHTA allows airport proprietors to levy reasonable rental, landing and service fees from airline carriers for using airport facilities. Challenges to the reasonableness of fees or charges must be brought before the Secretary. *See Miller, supra,* 273 *F.*3d at 725–26, 731 (noting that there is no private right of action in the AHTA to challenge the fees Milwaukee County charged an airport hangar owner); *Southwest, supra,* 268 *F.*3d at 1170 (holding that there is no private right of action to challenge local ordinance that set fees at airport); *Air Transp. Ass'n, supra,* 844 *F.Supp.* at 555 (concluding that the Secretary has discretion to

remedy unreasonable fees).[4] There is no private right of enforcement under the AHTA.

## III.

■ Plaintiffs next argue that the Ordinance violates the AHTA by imposing a tax on rental car companies at the Airport. Even though there is no private cause of action, we will address the merits and review the trial court's grant of summary judgment to defendants. We first identify the standard of review.

■ Our review of the grant or denial of summary judgment is de novo, using the same legal standard as the trial court. *Dugan Constr. Co. v. N.J. Tpk. Auth.*, 398 *N.J.Super.* 229, 238, 941 *A.*2d 622 (App.Div.), *certif. denied,* 196 *N.J.* 346, 953 *A.*2d 764 (2008); *Prudential Prop. & Cas. Ins. Co. v. Boylan,* 307 *N.J.Super.* 162, 167, 704 *A.*2d 597 (App.Div.), *certif. denied,* 154 *N.J.* 608, 713 *A.*2d 499 (1998). Summary judgment is proper if, viewing the evidence in the light most favorable to the non-moving party, no genuine issue of material fact is disputed. *Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995); *R.* 4:46-2(c). The trial court's factual findings are binding on appeal when supported by adequate, substantial and credible evidence in the record. *Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.,* 65 *N.J.* 474, 484, 323 *A.*2d 495 (1974). Conversely, the trial court's conclusions of law "and the legal consequences that flow from established facts are not entitled to any special deference." *Manalapan Realty, L.P. v. Twp. Comm. of Manalapan,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995).

---

[4] We do recognize limitations to the AHTA that are relevant here. AHTA does not grant either the Secretary or federal courts exclusive jurisdiction to decide the validity of a local tax ordinance, and state courts retain the ability to hear issues of state tax administration. *See* 28 *U.S.C.A.* § 1341 (providing that federal district courts "shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law" where a speedy and efficient remedy may be had in state courts).

■■■■ Under the Supremacy Clause, federal law is "the supreme Law of the Land[.]" *U.S. Const.* art. VI, cl. 2. State laws that " 'interfere with, or are contrary to the laws of [C]ongress, made in pursuance of the [C]onstitution[,]' are invalid." *Vail v. Pan Am Corp.,* 260 *N.J.Super.* 292, 297, 616 *A.*2d 523 (App.Div. 1992) (quoting *Wisconsin Pub. Intervenor v. Mortier,* 501 *U.S.* 597, 604, 111 *S.Ct.* 2476, 2481, 115 *L.Ed.*2d 532, 542 (1991)). The "focus of analysis is on the intent of Congress." *Miranda v. Fridman,* 276 *N.J.Super.* 20, 25, 647 *A.*2d 167 (App.Div.), *certif. denied,* 138 *N.J.* 271, 649 *A.*2d 1291 (1994). Congressional intent may be express or implied. *Ibid.*

■■■■ To determine if a conflict exists between state and federal law, a court must consider " 'the relationship between [the] ... laws as they are interpreted and applied, not merely as they are written.' " *R.F. v. Abbott Labs.,* 162 *N.J.* 596, 618, 745 *A.*2d 1174 (2000) (quoting *Jones v. Rath Packing Co.,* 430 *U.S.* 519, 526, 97 *S.Ct.* 1305, 1310, 51 *L.Ed.*2d 604, 614 (1977)).

Congress amended 49 *U.S.C.A.* § 40116(d), when it enacted the Federal Aviation Administration Authorization Act of 1994 (FAAA), *Pub.L.* No. 103–305, 108 *Stat.* 1569 (1994), to include the following prohibition:

> (2) (A) A State, political subdivision of a State, or authority acting for a State or political subdivision may not do any of the following acts because those acts unreasonably burden and discriminate against interstate commerce:
>
> . . . .
>
> (iv) levy or collect a tax, fee, or charge, first taking effect after August 23, 1994, exclusively upon any business located at a commercial service airport or operating as a permittee of such an airport other than a tax, fee, or charge wholly utilized for airport or aeronautical purposes.

[49 *U.S.C.A.* § 40116(d).]

In the nearly twenty years since the enactment of this amendment, "43 States and the District of Columbia" have levied taxes on airport car rental companies by applying *non-exclusive* taxes to "all similar entities within that taxing jurisdiction." 157 *Cong.*

*Rec.* H45, 2199 (daily ed. March 31, 2011) (statements of Rep. Greg Cohen and Rep. Sam Graves).[5]

In 2009, the Legislature enacted *N.J.S.A.* 40:48H–2, which authorized qualifying municipalities to levy a tax on car rental transactions that "occur within a designated industrial zone of the municipality." *Ibid.* The Legislature intended for *N.J.S.A.* 40:48H–2 to apply to "the City of Elizabeth and the City of Newark," the two municipalities in which sections of the Airport are located. Assembly Appropriations Committee Statement to Assembly Bill No. 4048 (June 11, 2009). The legislative history provides that car rental companies at the Airport generated $132.7 million in revenue in the first nine months of the fiscal year 2009. *Ibid.*

We review the Ordinance against this background. In determining whether a statute violates the AHTA, the Supreme Court has looked to the statute's purpose and effect. *See Aloha Airlines v. Dir. of Taxation,* 464 *U.S.* 7, 13–14, 104 *S.Ct.* 291, 295, 78 *L.Ed.*2d 10, 16 (1983) ("The manner in which the [Hawaii] . . . [L]egislature has described . . . [the statute] cannot mask the fact that the purpose and effect of [it] are to impose a levy upon the gross receipts of airlines."). *See also Complete Auto Transit, Inc. v. Brady,* 430 *U.S.* 274, 279, 97 *S.Ct.* 1076, 1079, 51 *L.Ed.*2d 326, 331 (1977) (noting that, in determining whether a tax violates the Commerce Clause, the Court considers the tax statute's "practical effect," not its formal language).

*Burbank* provides assistance in our consideration of the issues before us. In *Burbank,* the court considered whether a local

---

[5] Some members of Congress have viewed such a tax as exploiting a "loophole" in the AHTA, thereby violating the spirit of the Act. During the March 31, 2011 debate on the FAA Reauthorization and Reform Act of 2011, Representatives Graves and Cohen proposed an amendment to the AHTA that, were it adopted by Congress, would prohibit all but general sales taxes on car rental companies at commercial airports. *Ibid. See also* H.R.Rep. No. 112–45 (2011). Despite this effort, Congress did not amend the AHTA to proscribe non-exclusive taxes when it passed *H.R.* 658 as the FAA Modernization and Reform Act of 2012, *Pub.L.* No. 112–95, 126 *Stat.* 11, 87 (2012).

parking tax levied pursuant to a city ordinance was precluded by the AHTA. *Burbank, supra,* 76 *Cal.Rptr.*2d at 298. The tax affected customers at fifteen parking lots in the City of Burbank; however, three lots were within two miles of the airport, and ninety percent of the tax revenues derived from parking lots "at or near the airport." *Ibid.* The court concluded that the tax was not precluded by the AHTA, most notably 49 *U.S.C.A.* § 40116(d)(2)(A)(iv). The court said:

> First, the TPT [tax] is not a tax on air commerce. It is a tax on the fee paid for short-term parking. The AHTA does not apply to taxes on airport ground transportation services, such as parking facilities. Second, because the TPT is paid by the customer, not the parking lot operator, it is analogous to the "sales or use taxes" expressly permitted by the AHTA. Third, the TPT is not imposed exclusively upon airport businesses, because it is collected by all qualified parking lots in the City.
>
> [*Burbank, supra,* 76 *Cal.Rptr.*2d at 300 (citations omitted).]

*Susquehanna,* a more recent Pennsylvania decision, also upheld a parking tax under the AHTA, for many of the same reasons provided in *Burbank:*

> [P]arking patrons, not airport businesses, bear the burden of this tax; a tax on parking transactions is not a head tax. The incidence of the tax is the parking fee transaction, and the measure of the tax is on the transaction fee itself. Further, it is undisputed here that non-airport parking transactions are subject to the parking tax, and there is no exclusivity *sub judice.*
>
> [*Susquehanna, supra,* 918 *A.*2d at 816.]

As in both *Burbank* and *Susquehanna,* here, the tax is not "wholly utilized for airport or aeronautical purposes" under 49 *U.S.C.A.* § 40116(d)(2)(A)(iv). We must determine whether the City has imposed the tax "exclusively upon any business [that is] located at [the Airport]" or is "operating as a permittee of [the Airport][.]" 49 *U.S.C.A.* § 40116(d)(2)(A)(iv).

Judge Casale, relying on *Burbank,* held that the Ordinance did not violate the AHTA because it levied a tax "on the fee paid for renting a car" and "not on air commerce." In finding that the AHTA did not apply to ground transportation, the *Burbank* court cited *Alamo Rent–A–Car, Inc. v. Palm Springs,* 955 *F.*2d 30 (9th Cir.1992), which analyzed the former AHTA, 49 *U.S.C.A.* § 1513, which statute applied only to air transportation by aircraft. *Id.* at

31. *See also Salem Transp. Co. v. Port Auth. of N.Y. & N.J.*, 611 *F.Supp.* 254, 257 (S.D.N.Y.1985) (rejecting claim by ground transportation provider that a fee violated 49 *U.S.C.A.* § 1513). Two years after *Alamo* was decided, Congress amended the FAA to prohibit taxes exclusively levied on *any* business located at a commercial service airport. 49 *U.S.C.A.* § 40116(d)(2)(A)(vi). The current statute does not distinguish between air and ground transportation.

The Law Division held that the Ordinance levied a tax not on a "business" at the Airport, but on a consumer. The trial court reasoned that the tax was permissible under the AHTA as "the type of [sales] tax" allowed by 49 *U.S.C.A.* § 40116(e)(1). This is consistent with the reasoning in *Susquehanna*, where the court upheld a parking tax on parking transactions at or near the airport because the "measure of the tax [was] on the transaction fee" and was not a head tax. *Supra*, 918 *A.*2d at 817.

A state may levy "sales or use taxes on the sale of goods or services" that do not violate subsection (d) of the AHTA. 49 *U.S.C.A.* § 40116(d)(2)(A)(iv). When subsection (e) is read in conjunction with subsection (d), the AHTA states that a state or municipality is prohibited from levying any "sales or use taxes" exclusively upon any business located at a commercial service airport. 49 *U.S.C.A.* § 40116(d)-(e). The relevant inquiry is whether there is a meaningful distinction between the terms "consumer" and "business" under these provisions.

We conclude that the AHTA's prohibition against taxes levied upon a business does not extend to consumers. To be sure, Congress expressly precluded taxes levied on consumers traveling in air commerce under 49 *U.S.C.A.* § 40116(b), but did not do so under 49 *U.S.C.A.* § 40116(d)(2)(A)(iv), notwithstanding Congress' awareness that businesses, including airlines, could pass on the taxes imposed on them to air travelers. *See Niagara Frontier Transp. Auth. v. E. Airlines, Inc.*, 658 *F.Supp.* 247, 251 (W.D.N.Y. 1987) (stating that "Congress was aware that if the tax . . . were

assessed to the airline, it would, in all probability, be passed on to the airline passengers").

In *Susquehanna,* the court explained:

The difference then between a business privilege tax and a transaction tax is not just the stated subject of the tax, but how the tax is measured. A business privilege tax is a tax imposed on all of the gross receipts from all of the businesses' activities anywhere, so long as the base of operations within the political subdivision contributes to those activities because the privilege of doing business is "far more than the sum of transactions ... performed within the territorial limits of the taxing entity." A transaction tax, however, is imposed on the receipts from the designated transactions that are actually performed within the taxing entity, because its subject is only the transaction and not the privilege of engaging in a business that allows the transaction to be consummated.

[*Supra,* 918 A.2d at 818 (quoting *Airpark Int'l I v. Interboro Sch. Dist.,* 558 *Pa.* 1, 735 A.2d 646, 647 (1999)).]

The statute provides that levying exclusive taxes on businesses located at an airport is one of those acts that "unreasonably burden and discriminate against interstate commerce[.]" 49 *U.S.C.A.* § 40116(d)(2)(A). Congress determined that, like airlines, airport businesses are engaged in interstate commerce. This is because airport businesses, like airlines, service air travelers and not in-state users. *See Denver v. Cont'l Air Lines, Inc.,* 712 *F.Supp.* 834, 840 (D.Colo.1989) (observing 49 *U.S.C.A.* § 1513 was intended to prohibit "the imposition of such local taxes, fees, and charges that would be passed on to the flying public"). As the Seventh Circuit noted in dicta in *Indianapolis Airport Authority v. American Airlines, Inc.,* 733 *F.*2d 1262 (7th Cir.1984), customers of car rental companies located at airports are air travelers, and the "rental fees" that are imposed upon those companies by airport proprietors are similar to head taxes on air travelers:

The parking lot is used by emplaning passengers and by people picking up deplaning passengers. The car rental agencies are used by emplaning and deplaning passengers, and likewise the food stands and newsstands. This means that when the airport charges a rental fee to concessionaires it is as if it were charging a landing fee to the airlines or imposing a head tax on the passengers. [*Id.* at 1267–68.]

*See also Southerland v. St. Croix Taxicab Ass'n,* 315 *F.*2d 364, 369 (3d Cir.1963) (finding that the airline passengers' prearranged transportation was part of the "interstate journey," and thus, an

exclusive franchise granted to a taxicab company by the Virgin Islands Territory to transport people to and from the airport was an unreasonable burden on interstate commerce); *Charter Limousine, Inc. v. Dade Cnty. Bd. of Cnty. Comm'rs*, 678 *F*.2d 586, 589 (5th Cir.1982) (following *Southerland* ).

Although the express language of the AHTA makes clear that a consumer is not a "business," the statute prohibits taxes upon consumers because such taxes constitute taxes upon businesses located at airports. Here, car rental operators have an obligation under the Ordinance to collect the tax, and the failure to do so subjects them to penalties; consumers do not bear the whole obligation to remit the tax. The Ordinance has been carefully drafted to not violate any limitations imposed by the AHTA.

The trial court held that the tax was non-exclusive because it was similar to the parking tax upheld in *Burbank*. There, the tax applied to every parking lot in the City of Burbank, except for exempt lots used for medical facilities, and metered and monthly parking. *Supra,* 76 *Cal.Rptr.*2d at 298. Here, rental car companies in the City are not subject to the tax unless they are located in either the Second or Third Industrial Zone, both of which districts extended well beyond the boundaries of the Airport. In fact, the record indicates that the industrial zones at issue together comprise over forty percent of the area of the City, and the Airport occupies only a portion of the Third Industrial Zone.

The AHTA does not define the term "exclusively." As such, it is unclear whether, in order to be deemed non-exclusive, a tax must apply to all, or only some, of the like-kind businesses not located at an airport. The holding in *Susquehanna* suggests that, unlike the tax in *Burbank*, a sales tax is non-exclusive if it affects any non-airport transactions and need not affect every like-kind business within the taxing jurisdiction. *Susquehanna, supra,* 918 *A*.2d at 817. The AHTA prevents the imposition of taxes exclusively on airport businesses, but it does not preclude taxes that *disproportionately affect* the airport businesses. A tax is non-

exclusive if it affects at least one business that is not located at an airport.

While all of the car rental companies affected by the tax here are located in the Third Industrial Zone, either at or near the Airport, and they all service the Airport in some capacity, they also provide car rental services for and store rental cars to be used by customers at locations other than the Airport. Significantly, the AHTA does not prohibit a tax on businesses *near* an airport.

Here, the Ordinance does not apply only to the rental transactions that occur at the Airport, even though all of the affected businesses are in the Third Industrial Zone. As the trial judge noted:

> [T]he tax is payable to anyone who rents a car in the designated zones, not only air travelers[;] and air travelers who wish to avoid the tax can travel outside of the industrial zones and rent a car elsewhere.

We give little weight to the statements City Council members made at the public hearing on adopting the Ordinance. We look to the adopted Ordinance first rather than to the political process that may have generated it. Political rhetoric will not overcome the language of the Ordinance. We recognize that the State retains the power to impose a sales tax upon transactions near an airport, which power will not be abridged absent clear and manifest congressional intent in the AHTA to bar sales taxes imposed on a "consumer" of airport car rental businesses under the circumstances presented here.

### IV.

Finally, we address the argument that the Ordinance violates the Commerce Clause. We reject this claim.

 Plaintiffs have failed to address the threshold question in the dormant Commerce Clause analysis, which is whether Congress has exercised its plenary power under the Commerce Clause in the field at issue. *See Western & S. Life Ins. Co. v. State Bd. of Equalization,* 451 *U.S.* 648, 652–53, 101 *S.Ct.* 2070, 2075, 68

*L.Ed.*2d 514, 520 (1981). *See also National Fed'n of Indep. Bus. v. Sebelius,* 567 *U.S.* ——, 132 *S.Ct.* 2566, 183 *L.Ed.*2d 450 (2012) (slip op. at 17–18) (recognizing that Congress has broad authority under the Commerce Clause, not confined to the regulation of commerce among the states, and extending to activities that have a substantial effect on interstate commerce, including activities that do so only when aggregated with similar activities of others). Congress may authorize a state to engage in regulation that would otherwise violate the dormant Commerce Clause by manifesting its " 'unambiguous intent' " in a federal statute to approve of the violation. *Southwest, supra,* 268 *F.*3d at 1177 (quoting *Wyoming v. Oklahoma,* 502 *U.S.* 437, 458, 112 *S.Ct.* 789, 802, 117 *L.Ed.*2d 1, 24–25 (1992)). When Congress authorizes a state to act, courts may not review the state taxes or other regulations for violations of the dormant Commerce Clause. *Merrion v. Jicarilla Apache Tribe,* 455 *U.S.* 130, 154, 102 *S.Ct.* 894, 910, 71 *L.Ed.*2d 21, 40 (1982).

 In the AHTA, Congress expressly permitted states to tax airport businesses in the manner provided in subsection (e). *See Burbank, supra,* 76 *Cal.Rptr.*2d at 301 (finding that the tax fell within subsection (e) and was therefore "expressly permitted by the AHTA" and did not violate the Commerce Clause).

We agree that the tax enabled by the Ordinance falls within the scope of congressional authorization provided in the AHTA. Dormant Commerce Clause review is therefore precluded. *See Hughes v. Oklahoma,* 441 *U.S.* 322, 336, 99 *S.Ct.* 1727, 1736, 60 *L.Ed.*2d 250, 262 (1979) (stating the analysis).

 For the sake of completeness, we recognize that even if Congress had not granted the City express permission in the AHTA, under a traditional dormant Commerce Clause analysis, a tax that affects interstate commerce will be sustained if it passes scrutiny under the test articulated in *Complete Auto.* Our Court has followed the *Complete Auto* test, noting that

[t]he [*Complete Auto* ] test will sustain a state tax using a formula apportionment method "[ (1) ] when the tax is applied to an activity with a substantial nexus with

the taxing State, [ (2) ] is fairly apportioned, [ (3) ] does not discriminate against interstate commerce, and [ (4) ] is fairly related to the services provided by the State."

[*Whirlpool Props., Inc. v. Dir., Div. of Taxation*, 208 *N.J.* 141, 163, 26 *A.*3d 446 (2011) (quoting *Complete Auto, supra,* 430 *U.S.* at 279, 97 *S.Ct.* at 1079, 51 *L.Ed.*2d at 331).]

Here, the Ordinance applies to car rental activity that has a substantial nexus to the City because the rental car agencies and the Airport are located in the City, and customers "drive over City streets" to pick up and return the rented car. *Burbank, supra,* 76 *Cal.Rptr.*2d at 301. The tax is fairly apportioned because the rental car transaction occurs within the City, and the tax does not discriminate against interstate commerce because every person in the City must pay the tax if a car is rented from either the Second or Third Industrial Zone. Lastly, the tax would likely be reasonably related to the services provided by the City because, as we have previously noted, customers drive on the City's streets using the cars they have rented, and additionally, their rights under the rental car contracts are protected by New Jersey law. *See Commonwealth Edison Co. v. Montana,* 453 *U.S.* 609, 624–26, 101 *S.Ct.* 2946, 2957–58, 69 *L.Ed.*2d 884, 899–900 (1981) (stating that where a general revenue tax does not discriminate against interstate commerce and is apportioned to activities occurring within the State, the tax is valid if reasonably related to the benefits afforded by the State).

The Ordinance does not violate the Commerce Clause.

Affirmed.